**In re Byron Chester FIELDS Cheryl Lynn Fields, Debtors.**

**Bankruptcy No. 382–03581.**

United States Bankruptcy Court, D. Oregon.

Feb. 1, 1983.

Val W. Robbins, Bend, Or., for debtor.

Robert W. Myers, Portland, Or., trustee.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

At the hearing upon confirmation of the debtors' plan the trustee, Robert W. Myers, objected to confirmation on the ground that the plan was not filed in good faith. There were no other appearances at the hearing.

The record shows that the chapter 13 petition was signed by the debtors on November 5, 1982 and was filed on November 8, 1982.

A proof of claim filed herein by General Motors Acceptance Corporation (GMAC) shows that on October 7, 1982, less than one month prior to the signing of the chapter 13 petition, the debtor purchased upon contract a new 1982 Chevrolet ¾ ton pickup for a cash price of $11,000, a cash down payment of $1,529 with a balance of $9,471.00 plus credit life insurance of $498.57 and a license fee of $29.00 or a total of $9998.53. At the time of the filing of the proof of claim on December 27, 1982 the balance due upon the contract, including unearned finance charges was $13,559.50. The contract calls for payments of $288 per month.

In the debtors' Chapter 13 Statement the debtors show the value of the pickup at $1,500.00. This figure is probably intended as the value of the equity of the debtors. The debtors show the balance due as $9,500. The purchase price of $11,000 less the balance due would leave an equity of $1,500. Thus it appears that the debtors are asserting that the pickup has a market value of $11,000 with an equity therein of $1,500.

The Chapter 13 Statement also shows the following information. The husband is employed as a mail carrier with a monthly gross salary of $1,800 and a net salary of

$1,564.87. The wife is not employed but is shown as a housewife. There are two teen-age children in the family. The wife receives monthly child support from a previous marriage of $228. The budget makes provision for the contract payments on the purchase of the pickup of $288 per month. Subtracting the expenditures shown in the budget from the monthly net income leaves a surplus of $143 per month, of which the debtors' plan proposes that $140 be paid to the trustee. The debtors also own a 1972 Cadillac automobile which is free and clear of encumbrances. The debtors owe $10,-332.90 of unsecured debt of which $975 represents dental services and the balance of which consists of loans and credit purchases.

The debtors' plan provides that the debtors will pay the trustee $140 per month to provide dividends to unsecured creditors of 41%, and that they will pay, outside the plan, the monthly payments upon the mortgages upon the home and upon the contract for the purchase of the pickup.

The proof of claim filed by GMAC shows a balance due, not including unearned finance charges, of approximately $10,000. If the debtor would return the pickup, it is probable that the balance owing would be covered by the value of the pickup.

If, in addition to the $140 provided in the plan, the debtors would pay the $288 monthly payment now being made upon the pickup instead to the trustee, the total of $428 per month to the trustee would, after subtracting the trustee's compensation and expenses of 8%, pay the unsecured creditors totaling $10,322.90 in full in a period of 27 months.

It appears that the debtors do not own any property other than property which they could claim exempt. Therefore if the debtors' estate were liquidated in a chapter 7 case, there would be no dividend to unsecured creditors.

11 U.S.C. § 1325 sets forth the findings which, if made, dictate that the court enter an order confirming the plan. The debtors' plan in this case dictate meets all of the requirements of § 1325 with the exception of subsection (a)(3) which requires a finding that " * * * the plan has been proposed in good faith and not by any means forbidden by laws; * * *."

■ The Court of Appeals of the Ninth Circuit has held that subsection (a)(3) does not impose a quantitative test based upon the percentage to be received by unsecured creditors. Subsection (a)(4), which requires that the unsecured creditors receive not less than they would receive if the estate of the debtor were liquidated under chapter 7, establishes the minimum which must be received by unsecured creditors. The plan in this case meets this latter requirement. To determine whether a plan meets the good faith requirement of subsection (a)(3) requires inquiry into a number of factors other than the minimum payment to be received by unsecured creditors required by subsection (a)(4). Not the least important of such factors is the financial condition of the debtors and their ability to pay all or a portion of their debts. The bankruptcy court is a court of equity. The court must look to all relevant factors to determine whether the debtors have acted equitably in proposing their plan. Good faith must be determined on a case by case basis. *In re Goeb,* 675 F.2d 1386 (9th Cir.1982).

■ In this case, prior to the purchase of the new pickup the debtors owned, and they still own, a 1972 Cadillac which is free from encumbrances. Only the husband is employed. At the time of filing over 90% of the unsecured debts represented consumer purchases and loans voluntarily incurred. The pickup is not needed in order for the husband to continue his employment or for the debtors to make payments to the trustee. Had the debtors not purchased the pickup shortly before filing the Chapter 13 petition, or if the debtors would now return the pickup, they would be financially able to continue payments upon the mortgages upon their home and pay their unsecured creditors in full in a period of less than three years. What the plan in effect is proposing is that the unsecured creditors be paid only 41% in order to permit the debtors

**100**

to purchase an unnecessary item. This is not an equitable proposal and therefore not a good faith proposal.

An order will be entered herein denying confirmation of the debtors' plan.