**In re Armalean NELSON, Debtor.**

BAP No. EC–85–1060.

Bankruptcy No. 284–03150–W–13.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Submitted Aug. 13, 1985.[*]

Decided Oct. 28, 1985.

Roxanne Daneri, Miller & Daneri, Sacramento, Cal., for appellant.

Max Cline, Sacramento, Cal., for appellees.

9th Cir.R. 3(f) and Fed.R.App.P. 34(a).

---

[*] The Panel finds this case appropriate for submission without argument pursuant to BAP Rule 3,

Before MEYERS, ELLIOTT and ASH-LAND, Bankruptcy Judges.

MEYERS, Bankruptcy Judge.

A creditor, the Golden 1 Credit Union ("Credit Union"), appeals from an order confirming the debtor's Chapter 13 plan.

On October 10, 1980, the Credit Union issued a 15-year loan in the amount of $25,000 to the debtor and her former spouse, which was secured by a second deed of trust, with power of sale, on the debtor's principal residence. In the years that followed, the debtor repeatedly defaulted and attempted to cure. Each time the loan was reinstated. Twice the Credit Union advanced sums to cure arrearages on the first deed of trust. The last default occurred on June 6, 1984, just over three months before the debtor filed her petition under Chapter 13 of the Bankruptcy Code on September 7, 1984. Despite the Credit Union's Motion for Relief From Automatic Stay and objections to confirmation, a plan providing for the payment of pre-petition arrearages over a 24-month period under the plan and post-petition payments outside the plan was confirmed at a hearing on January 21, 1985. An order thereon was entered February 20, 1985, from which the Credit Union appeals.

On appeal, the Credit Union argues that the debtor has no right to cure the default and reinstate the loan since state law, which would not permit the debtor to "de-accelerate" the loan, is applicable here. California Civil Code § 2924c(a)(1) permits a debtor to cure any default by paying the arrearages on the loan within three months of the recording of the notice of default. As three months and one day have passed, § 2924c(a)(1) would deny this Chapter 13 debtor the right to cure, for any reinstatement of the loan at this point would violate that creditor's absolute and matured right to accelerate and foreclose.

The Credit Union contends that federal bankruptcy law should not be given effect to defeat the result reached under state law. We disagree. The Credit Union is asking that we turn our backs on the great weight of authority. The purpose of developing a body of federal bankruptcy law is to provide a uniform national remedy by which to adjust debts, thus avoiding the harsher alternative of liquidation. To permit, for Chapter 13 purposes, the variations of the laws of the different states to govern the effect of an acceleration and its curability would be to defeat this important purpose. *Grubbs v. Houston First American Savings Ass'n*, 730 F.2d 236, 241–42 n. 9 (5th Cir.1984). *See also In re Taddeo*, 685 F.2d 24, 25 (2nd Cir.1982). Where the language of Congress indicates a policy requiring a result not reached under state law, the Supremacy Clause does not permit state law to interfere with the intended result. *See Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971); *In re Dahdah*, 20 B.R. 665, 666 (9th Cir. BAP 1982); *In re Farmer's Markets, Inc.*, 36 B.R. 829, 833 n. 2 (Bkrtcy.E. Cal.1984). Therefore, we look only to the results reached under federal law.

The Credit Union also argues that § 1322(b)(2) of the Bankruptcy Code does not permit a reinstatement of the loan, as that would be a modification of the rights of a creditor secured only by a security interest in real property. Nor would the Credit Union agree to reinstatement under § 1322(b)(5), which permits the curing of any default within a reasonable time and the maintenance of payments on any secured claim on which the last payment is due after the date on which the final payment under the plan is due. The Credit Union argues that on an accelerated debt, the last payment has already fallen due.

Neither the Court of Appeals of the Ninth Circuit nor this Panel has had occasion to resolve the issue of curability where a loan has been accelerated prior to the filing of a Chapter 13 petition. In *In re Gavia*, 24 B.R. 573, 575 (9th Cir. BAP 1982), the Panel found that a Chapter 13 plan may modify the rights of a creditor whose only security is the debtor's residence, provided that the default is cured within a reasonable time. In a case involving a secured creditor of this type, the

Panel found that although § 1322(b)(2) prohibits the *modification* of a security interest in the debtor's principal residence, § 1322(b)(5) demonstrates that Congress did not intend to prohibit the *curing* of such a default within a reasonable time. *In re King,* 23 B.R. 779 (9th Cir. BAP 1982). The Panel found there that "reasonable time" is a flexible concept, and whether a particular proposal to cure is reasonable must be determined on a case-by-case basis. In that case, curing arrearages over a 30-month period was found not to be unreasonable per se. 23 B.R. at 780–81.

The Court of Appeals addressed the issue of curability in a case involving the reinstatement of a debt which had matured *without acceleration* prior to the filing of the Chapter 13 petition. *In re Seidel,* 752 F.2d 1382 (9th Cir.1985). In finding "curing" to be an impermissible modification under § 1322(b)(2), the Court specifically reserved the question of whether a debt which was accelerated prior to the filing of a Chapter 13 petition is curable. 752 F.2d at 1386 n. 1. We reach that question in this case.

In the leading case of *In re Taddeo, supra,* 685 F.2d 24, the trust deed holder, not having received loan payments for several months, accelerated the mortgage and declared the entire balance due immediately. Before the trust deed holder could obtain final judgment of foreclosure and sale, the debtor filed a petition under Chapter 13. Citing 11 U.S.C. § 1322(b)(3), which permits the plan to provide for the curing or waiving of any default, and § 1322(b)(5), the Second Circuit Court of Appeals permitted the debtor to "deaccelerate" the mortgage and resume payments. The Second Circuit found that the power to "cure any default" granted in §§ 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages found in subsection (b)(2). 685 F.2d at 27.

The reasoning of the *Taddeo* court has since been adopted by the Fifth, Sixth, Seventh and Eleventh Circuits. *See Grubbs v. Houston First American Savings Ass'n, supra,* 730 F.2d 236 (5th Cir.1984); *Matter of Clark,* 738 F.2d 869 (7th Cir.1984); *In re Glenn,* 760 F.2d 1428 (6th Cir.1985); *In re Terry,* 764 F.2d 1558 (11th Cir.1985). Several bankruptcy courts in the Ninth Circuit have followed this reasoning as well. *See In re Stone,* 27 B.R. 8 (Bkrtcy.Or.1982); *In re Sapphire Investments,* 27 B.R. 56 (Bkrtcy.Ariz.1983); *In re Ivory,* 32 B.R. 788 (Bkrtcy.Or.1983).

The Panel recognizes that neither the decisions of Circuit Courts outside the Ninth Circuit, nor those of bankruptcy courts within this circuit, are binding on this Panel. *See Strand v. Schmittroth,* 251 F.2d 590, 602 (9th Cir.1957); *Starbuck v. City and County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977); *In re Brents-Pickell,* 12 B.R. 352, 357 (Bkrtcy.S. Cal.1981). However, in the interest of uniformity, we should follow the decisions of other federal appellate courts unless satisfied that they are erroneous. *See First Charter Financial Corp. v. United States,* 669 F.2d 1342, 1345 (9th Cir.1982). *See also Grain Belt Supply Co. v. Commissioner of Internal Revenue,* 109 F.2d 490, 492 (8th Cir.1940); *United States v. Kelley,* 110 F.2d 922, 924 (8th Cir.1940).

We are convinced of no such error in the cited opinions and follow those decisions which allow Chapter 13 debtors to "deaccelerate" and resume payments.

The reasoning of the *Taddeo* court does justice to the language and the legislative history of § 1322(b). By interpreting the various subparagraphs in a reasonable fashion, *Taddeo* and its progeny have concluded that a deacceleration is a cure, not a modification. In limiting the circumstances under which a plan could modify the rights of secured creditors, Congress did not intend to deny the parties the right to rescue the benefit of their respective bargains where such a course of action was within the debtor's means and would not cause undue hardship to the creditor. Rather, Congress sought to prohibit those modifications which would change the underlying expectations of the parties. A clear example of the type of modification Congress intended to prevent was the attempt of the debtor in *Seidel* to reinstate a loan which

had already matured without acceleration. As the expectation of that creditor was to receive full repayment of the loan as of the maturity date, the court properly refused to interfere with that expectation. In the present case, the Credit Union, whose loan was not due to be fully paid for another decade, had no such expectation of immediate full repayment. The repayment of arrearages over a two-year period while maintaining current payments appears to be the precise situation foreseen by Congress in drafting § 1322(b)(5).

Under these circumstances, we find that the trial court properly confirmed a plan permitting the debtor to cure the default and reinstate the loan.  AFFIRMED.