In re John Joseph METZ, Debtor.

DOWNEY SAVINGS AND LOAN ASSOCIATION, Appellant,

v.

John Joseph METZ, Appellee.

BAP No. SC–85–1235–AbEAs.

Bankruptcy No. SD 85–02003–M13.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted Feb. 20, 1986.

Decided Sept. 26, 1986.

Thomas C. Starrett, P.C., Costa Mesa, Cal., for appellant.

Radmila A. Fulton, San Diego, Cal., for appellee.

Before ABRAHAMS, ELLIOTT, and ASHLAND, Bankruptcy Judges.

## OPINION

ABRAHAMS, Bankruptcy Judge:

Downey Savings & Loan Association ("Downey") appeals from the bankruptcy court's confirmation of a Chapter 13 debtor's composition plan. The debtor Metz, who is the appellee, filed three bankruptcy petitions within six months. After receiving a discharge in the first of his bankruptcy cases, a Chapter 7, Metz filed two consecutive Chapter 13 petitions. This procedure is often called a "Chapter 20" (a Chapter 7 plus a Chapter 13). Downey argues that Chapter 20's are always filed in bad faith and that plans proposed in Chapter 20 cases must always be denied confirmation for failure to meet the good faith requirement of section 1325(a)(3) of the Bankruptcy Code. We disagree and AFFIRM.

### I.

The chronology of Metz's bankruptcy process is as follows:

| | |
|---|---|
| October 9, 1984 | –Chapter 7 petition filed. |
| February 19, 1985 | –Discharge granted in Chapter 7; and Chapter 13 petition filed. |
| April 19, 1985 | –First Chapter 13 case dismissed. |
| May 3, 1985 | –Second Chapter 13 filed; and Downey's foreclosure sale on debtor's residence scheduled to occur. |
| July 22, 1985 | –Confirmation of plan in second Chapter 13 case. |

### II.

The debtor filed a petition under Chapter 7 of the Bankruptcy Code on October 9, 1984. His principal asset was his home, encumbered by a promissory note and deed of trust held by Downey. A series of judgment liens had also been recorded against the house.

On February 19, 1985, Metz obtained a discharge in the Chapter 7 case. At that time, all his unsecured debts and judgment liens were extinguished. *See* 11 U.S.C. §§ 524, 522(f). On the same date, he filed his first Chapter 13 petition.

In this first Chapter 13 case, the proposed plan called for repayment of delinquent amounts on the bank's promissory note over 60 months. The plan did not provide for payment of a market rate of interest on the arrearages or for the payment of delinquent property taxes. On April 19, 1985 the bankruptcy court dismissed the first Chapter 13 case. The court's order was made "without prejudice."

Metz filed a second Chapter 13 case two weeks later on May 3, 1985. Downey had scheduled a foreclosure sale of the debtor's house for that day. We assume filing of the second Chapter 13 stopped the foreclosure. *See* 11 U.S.C. § 362(a). The confirmation hearing for the proposed plan in this second Chapter 13 case was held on July 22, 1985. The new plan differed materially from the earlier plan. The new plan called for repayment of arrears to the bank over 36 months. Interest on the arrears was set at the market rate of 12%. The debtor also proposed to pay his delinquent property taxes over the first six months of the plan.

Downey objected to confirmation of this second plan on the ground that it was not proposed in good faith. 11 U.S.C. § 1325(a)(3). The Bankruptcy Judge ruled that the Bankruptcy Code does not prohibit a debtor from bringing a Chapter 13 case shortly after receiving a discharge in a Chapter 7 case. The court reasoned that there were adequate grounds for the debtor to file a second Chapter 13 case and to propose a new plan. In particular, the debtor's earnings had increased significantly, by $350 per month. The court further determined that the debtor had shown his good faith by keeping the payments on his house current.

### III.

In Downey's view, filing a Chapter 13 case shortly after the debtor receives a Chapter 7 discharge is bad faith *per se.* Thus, to Downey, any plan proposed in a Chapter 13 case that is part of a Chapter 20 must always fail the good faith requirement of section 1325(a)(3).

### A.

█ In this circuit, the test of good faith in proposing a Chapter 13 plan is made on a case-by-case basis, with the court reviewing the "totality of the circumstances." *Goeb v. Heid (In re Goeb )*, 675 F.2d 1386, 1390,

1391 (9th Cir.1982) ("the court must make its good-faith determination in light of *all* militating factors"; "bankruptcy courts cannot [make a] substitute ... for a review of the totality of the circumstances"); *accord Chinichian v. Campolongo (In re Chinichian )*, 784 F.2d 1440, 1444–46 (9th Cir.1986); *In re Gayton*, 61 B.R. 612, 3 Bankr.L.Rep. (CCH) ¶ 71,194 (9th Cir. BAP 1986); *In re Street*, 55 B.R. 763, 3 Bankr.L. Rep. (CCH) ¶ 70,892 (9th Cir. BAP 1985) (best efforts and all factors considered); *Bank of America National Trust and Savings Association v. Slade (In re Slade )*, 15 B.R. 910, 911–912 (9th Cir. BAP 1981). Most circuits have followed *Goeb* and adopted a flexible, totality-of-the-circumstances test. *In re Hines*, 723 F.2d 333, 334 (3d Cir.1983); *Deans v. O'Donnell (In re Deans )*, 692 F.2d 968, 972 (4th Cir. 1982); *Public Finance Corp. v. Freeman (In re Freeman )*, 712 F.2d 219, 221 (5th Cir.1983); *United States v. Estus (In re Estus )*, 695 F.2d 311, 316–17 (8th Cir.1982); *Flygare v. Boulden (In re Flygare )*, 709 F.2d 1344, 1346–48 (10th Cir.1983); *Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens )*, 702 F.2d 885, 888–89 (11th Cir.1983); *accord Ravenot v. Rimgale (In re Rimgale )*, 669 F.2d 426, 431–32 (7th Cir.1982) (preceding *Goeb* but also advocating case-by-case analysis); *Barnes v. Whelan*, 689 F.2d 193, 198–200 (D.C.Cir. 1982) (not citing *Goeb* with approval, but rejecting a rule of bad faith *per se* where payments to unsecured creditors are only nominal). No circuit level decision has rejected the *Goeb* approach in favor of a *per se* rule. *But cf. Memphis Bank & Trust Co. v. Whitman (In re Whitman )*, 692 F.2d 427, 431–32 (6th Cir.1982).

Although the *Goeb* court did "not attempt ... to compile a complete list of relevant considerations," 675 F.2d at 1390, it gave some general examples of bad faith. The court asked whether the debtors had "acted equitably" [1] in proposing their Chapter 13 plan. The court sought to determine

---

1. *E.g., In re Fields,* 27 B.R. 98 (Bankr.D.Or.1983) (plan rejected as inequitable where debtors proposed to pay 41% of debts to unsecured creditors in order to enable debtors to purchase an unnecessary item, *i.e.,* a second vehicle).

whether the debtors had misrepresented facts in their proposed plan[2] and whether they were "unfairly manipulat[ing]" the Bankruptcy Code."[3] 675 F.2d at 1390. More recently, the Ninth Circuit has also stated that a good faith test "should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13." *Chinichian,* 784 F.2d at 1444.

### B.

As Downey correctly points out, obvious policy concerns arise as to the Chapter 13 case that is part of a Chapter 20. Unsecured creditors may be given very short shrift. Unsecured debts may be inequitably eradicated. For instance, because of liberal exemption provisions, Chapter 7 cases often result in the discharge of all the debtor's unsecured debts although the unsecured creditors receive no payments. As a result, a subsequent Chapter 13 case need only provide for the debts still outstanding after the discharge. Unless there are nondischargeable unsecured debts, the only debts remaining will be secured. The Chapter 20 case thus becomes, in effect, a zero payback Chapter 13 plan for unsecured creditors.

Chapter 20 cases benefit from the advantages of both Chapter 7 and Chapter 13, without suffering from their respective disadvantages. The Chapter 20 debtor receives the "superdischarge" of section 1328, which, as this popular name implies, is more generous than the standard Chapter 7 discharge of section 727. Only spousal and child support payments survive the superdischarge, with taxes paid as part of the plan. 11 U.S.C. § 1328(a)(2). In addition, in contrast to Chapter 7 cases, where the trustee takes over administration of the bankruptcy estate, under Chapter 13 the debtor is permitted to remain in control of the property of the estate. 11 U.S.C.

§ 1306(b). The debtor may also keep his home and vehicles, even if there is equity in the property in excess of exemptions and liens, so long as unsecured creditors will receive at least as much under the Chapter 13 plan as they would in a Chapter 7 distribution. 11 U.S.C. § 1325(a)(4). Because, before a Chapter 20 debtor proposes the Chapter 13 plan all unsecured claims are wiped out, the Chapter 20 debtor will always receive all excess equity in the property.

Another possible inequity in Chapter 20 cases concerns a 1984 amendment to the Bankruptcy Code. If either the trustee or the holder of an allowed unsecured claim objects to confirmation, the court may only approve the plan if it provides for payment to creditors of all of the debtor's projected disposable income for the first three years. 11 U.S.C. § 1325(b)(1) (amended 1984). The filing of a Chapter 13 case after a Chapter 7 discharge will probably nullify these requirements. There will be no unsecured creditors left to object, and, without unsecured creditors, the trustee will likely show little interest.

Chapter 20 also undermines the incentives built into Chapter 13 for debtors to pay their unsecured debts. If the Chapter 20 procedure is available, debtors will be tempted to avoid going directly into Chapter 13, where they may be required to use all disposable income to pay unsecured debts. 11 U.S.C. § 1325(b)(1)(B). The purpose of Chapter 13 is to reward the debtor who undertakes to repay his unsecured creditors with more lenient treatment than accorded a liquidating Chapter 7 debtor. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 6079, *and in* 2 App. Collier on Bankruptcy, pt. 11 (1980). "[T]he special benefits bestowed upon a Chapter 13 debtor are premised upon his willingness to repay at least some portion of his debts

---

**2.** *E.g., In re DeReus,* 53 B.R. 362, 365–66 (Bankr. S.D.Cal.1985).

**3.** *See, e.g., In re Waldron,* 785 F.2d 936, 3 Bankr. L.Rep. (CCH) ¶ 71,069 (11th Cir.1986) (sole purpose in filing Chapter 13 petition was to enable debtors to reject option agreement on sale of land).

..." *Slade,* 15 B.R. at 912; *Estus,* 695 F.2d at 314 n. 6. Chapter 20 cases, by circumventing the need to pay unsecured debts, pose a direct threat to the rationale for having Chapter 13. In Downey's view, this potential for abuse should give rise to a rule of bad faith *per se* in Chapter 20 cases.

While Chapter 20 cases are clearly undesirable, Downey's approach to Chapter 20's runs contrary to the totality-of-the-circumstances test of *Goeb.* 675 F.2d at 1389–90. Because each Chapter 13 plan should be tailored to the specific needs and abilities of the individual debtor, a case-by-case analysis of the good faith underlying the plan is logical and appropriate. As recent bankruptcy court opinions in this circuit have emphasized, potentials for abuse can be stemmed by case-by-case inquiries as to whether debtors are engaging in improper manipulation of the Bankruptcy Code. *E.g., In re Brock,* 47 B.R. 167, 170 (Bankr. S.D.Cal.1985) (Chapter 20 case brought for sole purpose of discharging embezzlement debt found to be nondischargeable under Chapter 7 is "unfair manipulation of the Bankruptcy Code"); *Snow v. Jones (In re Jones ),* 41 B.R. 263, 266–67 (Bankr.C.D. Cal.1984) ("filing six bankruptcy petitions for the sole purpose of delaying the secured creditors constitutes a clear abuse of the bankruptcy process").

A change in the debtor's circumstances would be one possible element of a totality-of-the-circumstances analysis. In Metz's case his salary increase was a change in circumstances. Downey contends that these changed circumstances should have been raised in the first Chapter 13 case and not have been used as grounds for bringing a second Chapter 13 case. This would mean an inflexible rule, rather than the case-by-case analysis prescribed by *Goeb.* The *Goeb* approach is illustrated by *Johnson v. Vanguard Holding Corp. (In re Johnson ),* 708 F.2d 865 (2d Cir.1983) where the Second Circuit reversed and remanded, directing that "the Bankruptcy Judge should determine whether [the debtor] had a bona fide change in circumstances that justified both her default on her first plan and her second filing." *Id.* at 868.

■ Here, the Bankruptcy Judge applied the proper test for determining the debtor's good faith in proposing his second Chapter 13 plan. The Bankruptcy Judge inquired into the totality of the circumstances relevant to the bankruptcy. The court ruled that the debtor's multiple filings were justified by the change in circumstances. Because Metz's earnings had increased, he could now propose an acceptable payment schedule and interest rate to pay the arrearages on his home loan. The court also determined that the debtor had shown good faith by keeping his house payments current during both Chapter 13 cases. The only circumstance negating good faith was the filing of the three bankruptcy cases within six months. The multiple filings alone were not sufficient to counter the other evidence of the debtor's good faith.

As we are persuaded that the Bankruptcy Judge applied the proper standard for determining good faith, his finding of good faith may only be overturned if clearly erroneous. Fed.R.Civ.P. Rule 52(a); *Crocker National Bank v. American Mariner Industries, Inc., (In re American Mariner Industries, Inc.),* 734 F.2d 426, 428 (9th Cir.1984); *Comer v. Comer, (In re Comer ),* 723 F.2d 737, 739 (9th Cir.1984). The court's reasons for finding good faith are persuasive and are not clearly erroneous.

### IV.

Downey relies upon *In re American Mariner Industries,* 734 F.2d 426, in support of its contention that the bankruptcy court deprived Downey of a vested property right. Downey argues that because, under California foreclosure law, the note was accelerated and the entire balance due, Downey was entitled to the current market interest rate on the unpaid balance of the note. *See* Cal.Civ. Code § 2924c. Downey claims Metz's Chapter 13 plan did not provide Downey with the present value of the

accelerated promissory note and therefore was unconstitutional and inequitable.

*American Mariner* turns on the interpretation of a single statutory phrase, "indubitable equivalent" and not upon the Constitution. 734 F.2d at 435 n. 11. This phrase appears only twice in the Bankruptcy Code, and it has two specific applications.

### A.

■ First, providing the indubitable equivalent of a secured creditor's collateral is one of three methods of giving "adequate protection" under section 361. Adequate protection is important to relief from the automatic stay, as in *American Mariner*, 11 U.S.C. § 362(d)(1); to use, sale or lease of property, 11 U.S.C. § 363; and to creation of liens to obtain credit. 11 U.S.C. § 364. The issue on appeal here, however, is the applicable standard for confirming a Chapter 13 plan. Section 361 and its use of "indubitable equivalent" are not relevant.

### B.

The expression "indubitable equivalent" is also found in section 1129(b)(2)(A)(iii), which allows the confirmation of Chapter 11 plans over the dissents of classes of secured creditors, *i.e.*, cram-down. Chapter 11 provides three methods for cramdown of secured creditors, including provision for "realization by [the secured credi-

tors] of the indubitable equivalent of their claims." [4]

In contrast, for Chapter 13 secured creditor cram-down, Congress authorized one of the other alternative provisions allowed for Chapter 11 confirmation,[5] not the indubitable equivalent provision. Congress could easily have used the "indubitable equivalent" standard of Chapter 11 for the parallel Chapter 13 secured creditor cram-down. It chose not to do so, and we will not impose this requirement.

### C.

■ The concept of "cure" in section 1322(b)(5) further undermines any argument that the concept of "indubitable equivalent" pertains to Chapter 13 plan confirmation. Section 1322(b)(5) permits curing of defaults for long-range financing arrangements that will outlive the Chapter 13 process. The meaning of "cure" under 1322 was defined by *In re Nelson*, 59 B.R. 417 (9th Cir. BAP 1985). *Nelson* held that a cure effected by repaying arrearages over a reasonable period, while maintaining current payments, was "the precise situation foreseen by Congress in drafting § 1322(b)(5)." 59 B.R. at 420. When a default triggers an acceleration clause in a security agreement, repayment of the overdue sums during the course of the Chapter 13 plan cures the default and reinstates the original security agreement.

**4.** (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—
(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the ... extent of the allowed amount of such claims; and
(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens

securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
(iii) *for the realization of the indubitable equivalent of such claims.* 11 U.S.C. § 1129(b)(2)(A) (emphasis added).

**5.** (a) [T]he court shall confirm a plan if— ...
(5) with respect to each allowed secured claim provided for by the plan— ...
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. 11 U.S.C. § 1325(a)(5).

*Nelson* also endorsed this type of repayment plan by distinguishing a *cure* of the terms in a promissory note and deed of trust from a *modification* of a security interest in residential real property, which is expressly prohibited under section 1322(b)(2). 59 B.R. at 419. *See also Di Pierro v. Taddeo, (In re Taddeo* ), 685 F.2d 24, 26–29 (2d Cir.1982); *Grubbs v. Houston First American Savings Association,* 730 F.2d 236, 241–42 (5th Cir.1984; *Federal Land Bank of Louisville v. Glenn, (In re Glenn* ), 760 F.2d 1428, 1431–35, 1442 (6th Cir.1985); *Matter of Clark,* 738 F.2d 869, 872 (7th Cir.1984; *Foster Mortgage Corp. v. Terry (In re Terry* ), 764 F.2d 1558, (11th Cir.1985), *modified,* 780 F.2d 894, 896–97 (1986). *Nelson* emphasized that a modification would "change the underlying expectations of the parties," whereas a cure simply reinstated the original bargain. Where a long-term financing agreement was not scheduled to mature for many years, the creditor had no legitimate objection to reinstatement, as he had not initially contemplated repayment in full until the term of the agreement had expired. 59 B.R. at 419.

## V.

■ We understand Downey to contend that its ability to accelerate the note for nonpayment under California Civil Code section 2924c is a vested right protected by the Just Compensation clause of the Fifth Amendment. We disagree.

Under the plan here, the note is reinstated at the original interest rate for future installments, but the arrearages bear interest at the higher current market rate.

Congress specifically addressed reinstatement in Chapter 11. Section 1124(2) [6]

provides that a claim is not "impaired" if defaults are cured and the agreement is reinstated according to its original terms. Claims that are not impaired do not vote on confirmation, 11 U.S.C. § 1129(a)(8)(B); *see also* 11 U.S.C. § 1129(a)(7) (amended 1984), so there is in effect a cram-down of reinstated claims.

As to section 1124(2), the Senate Committee report says:

[A] claim or interest is unimpaired by curing the effect of a default and reinstating the original terms of an obligation when maturity was brought on or accelerated by the default. The intervention of bankruptcy and the defaults represent a temporary crisis which the plan of reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain. Curing of the default and the assumption of the debt in accordance with its terms is an important reorganization technique for dealing with a particular class of claims, especially secured claims.

S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978), U.S.Code Cong. & Admin.News 1978, p. 5906, *reprinted in* 1986 Collier Pamphlet Edition Bankruptcy Code 582–83.

Downey's inconvenience here is not entitled to constitutional protection.

## VI.

Although we find that Chapter 20's are generally undesirable, we like even less the prospect of immutable rules defining what is good faith in proposing a Chapter 13 plan. Because the bankruptcy court's finding of good faith was not clearly erroneous

---

**6.** [A] class of claims or interests is impaired ... unless ... the plan—

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claims or interest to demand to receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest. 11 U.S.C. § 1124(2).

and because Downey was not entitled to an increase in its interest rate for future installments upon reinstatement of the loan, we AFFIRM.

ELLIOTT, Bankruptcy Judge, dissenting.

I respectfully dissent. One of the most litigated areas under the Bankruptcy Reform Act of 1978 was "good faith" of Chapter 13 plans that provided nothing or only a nominal amount for creditors. The cases cited by the majority show that eight circuit courts (including the District of Columbia) have taken up the issue. In addition the reports are filled with dozens of opinions by bankruptcy judges and district court judges on the subject.

To address concerns of the courts and the consumer lending industry, Congress included in the 1984 amendments to the Bankruptcy Code certain requirements for plan confirmation, i.e., provide a standard of good faith. Section 1325(b), as amended, provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
>
> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor; or
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The filing of a Chapter 7 case followed immediately by the filing of a new Chapter 13 case after receipt of the Chapter 7 discharge for the purpose of dealing with a secured creditor effectively circumvents the requirements of amended § 1325 that the debtor's plan provide for disbursement to creditors of all of his projected disposable income for three years. We realize that Downey, as a secured creditor, could not have objected under § 1325(b)(1) as amended, but the Chapter 13 trustee or the holder of an unsecured claim could have. The effect of the Chapter 20 scenario is to confirm a plan that pays nothing to unsecured creditors (by reason of the Chapter 7 discharge) without giving the trustee or unsecured creditors an opportunity to test the debtor's eligibility under § 1325(b).

Good faith has been defined in this Circuit to include an inquiry as to whether the debtor is unfairly manipulating the Bankruptcy Code, *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982).

In my opinion, a Chapter 7 followed by a separate Chapter 13 case on the heels of a Chapter 7 discharge, is an unfair manipulation of the Bankruptcy Code because it circumvents the requirements of § 1325(b).