**In re Eddie D. STRAUSE and Robin A. Strause, Debtors.**

**Clifford HELBOCK and Otylia M. Helbock, Movants,**

v.

**Eddie D. STRAUSE, Robin A. Strause, Harry W. Heid, Federal National Mortgage Association, Hydro–Scape Products, Inc., and Ornamental Plant Sales, Inc., Respondents,**

**Federal National Mortgage Association, a corporation and DSL Service Company, a California corporation, Movants.**

**Bankruptcy No. 88–09553–LM13. RS Nos. 0018, 0370.**

United States Bankruptcy Court, S.D. California.

May 19, 1989.

See also, Bkrtcy., 97 B.R. 22.

**224**

Joe R. Sutter, San Diego, Cal., Thomas C. Starrett, Costa Mesa, Cal., for movants.

Jeffery S. Styers, Rasmussen & Styers, San Diego, Cal., for debtors.

Harry W. Heid, San Diego, Cal., Trustee.

Edward A. Infante, San Diego, Cal., U.S. Trustee.

## MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

This case requires the Court to determine whether the debtors' petition filed under Chapter 13 was filed in good faith. The Chapter 13 petition was filed on the heels of an order granting real property secured creditors relief from automatic stay in a Chapter 7 proceeding earlier filed by the same debtors. The issue is framed by objections to confirmation filed by the real property secured creditors and the Chapter 13 Trustee; by motions for relief from stay brought by the secured creditors; and by the Chapter 13 Trustee's motion to dismiss.

This Court has jurisdiction to resolve these issues pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. These are core proceedings under 28 U.S.C. § 157(b)(2)(A), (G), (L) and (O).

## DISCUSSION

Consideration of the issues posed by this case starts with the decision of *In re Metz*, 67 B.R. 462 (9th Cir. BAP 1986), *aff'd* sub nom. *Matter of Metz*, 820 F.2d 1495 (9th Cir.1987). In summary, *Metz* rejected a creditor's argument that a Chapter 13 filed after a Chapter 7 proceeding was a *per se* bad faith filing. Instead, the court required a totality of the circumstances analysis be performed on a case-by-case basis.

The circumstances before the court in *Metz* were that the debtor filed his first bankruptcy petition under Chapter 7. Approximately four months later the debtor was granted a discharge. On the same date, the debtor filed a petition under Chapter 13. That case was dismissed because of defects in the plan as proposed. Two weeks later, the debtor filed a second petition under Chapter 13. That filing occurred on the same date set for the foreclosure sale on debtor's residence. Subsequently, the Bankruptcy Court confirmed the plan proposed by the debtor in his second Chapter 13 case. In doing so, the Bankruptcy Court observed that the debtor's earnings had increased significantly, and "that the debtor had shown his good faith by keeping the payments on his house current." 67 B.R. at 464. The secured creditor appealed.

On review, the Bankruptcy Appellate Panel in *Metz* observed that "obvious policy concerns arise as to the Chapter 13 case that is part of a Chapter 20." 67 B.R. at 465. At the core of those concerns is recognition that:

> Chapter 20 also undermines the incentives built into Chapter 13 for debtors to pay their unsecured debts. If the Chapter 20 procedure is available, debtors will be tempted to avoid going directly into Chapter 13, where they may be required to use all disposable income to pay unsecured debts. 11 U.S.C. § 1325(b)(1)(B). The purpose of Chapter 13 is to reward the debtor who undertakes to repay his unsecured creditors with more lenient treatment than accorded a liquidation Chapter 7 debtor. (Citation omitted). "[T]he special benefits bestowed upon a Chapter 13 debtor are premised upon his willingness to repay at least some portion of his debts ..." (Citations omitted). Chapter 20 cases, by circumventing the need to pay unsecured debts, pose a direct threat to the rationale for having Chapter 13.

67 B.R. at 465–466. The court then concluded:

> While Chapter 20 cases are clearly undesirable, ... a case-by-case analysis of the good faith underlying the plan is logical and appropriate. As recent bankruptcy court opinions in this circuit have emphasized, potentials for abuse can be stemmed by case-by-case inquiries as to

whether debtors are engaging in improper manipulation of the Bankruptcy Code. 67 B.R. at 466. The Court of Appeals for the Ninth Circuit affirmed on the same reasoning. 820 F.2d at 1497–1499.

As has been repeatedly recognized by the courts of the Ninth Circuit, and of other circuits, the Congress made no attempt to define "good faith". Consequently, courts over time have developed non-exhaustive lists of elements to be considered in an analysis of whether "good faith" exists within the context of a particular case.

The general test in this Circuit originated with *In re Goeb*, 675 F.2d 1386 (9th Cir. 1982). While declining to compile a definitive list of factors to consider, the court wrote:

> Given the nature of bankruptcy courts and the absence of congressional intent to specially define "good faith," we believe that the proper inquiry is whether the Goebs acted equitably in proposing their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner.

675 F.2d at 1390.

In its decision in *In re Chinichian*, 784 F.2d 1440 (9th Cir.1986), the court summarized the test as follows:

> A good faith test, however, should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13.

784 F.2d at 1444.

More recently, the Ninth Circuit Bankruptcy Appellate Panel listed "a number of specific factors [that] have been adopted as guidelines for determining good faith on a case-by-case basis ..." *In re Warren*, 89 B.R. 87, 92–93 (9th Cir. BAP 1988). Those factors are:

1) The amount of the proposed payments and the amounts of the debtor's surplus;

2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

3) The probable or expected duration of the plan;

4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) The extent of preferential treatment between classes of creditors;

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;

8) The existence of special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) The burden which the plan's administration would place upon the trustee.

89 B.R. at 93. As recognized in *Chinichian* (784 F.2d at 1444) and reiterated in *Warren*, "the debtor has the burden to establish good faith." 89 B.R. at 93.

The facts relevant to a "totality of the circumstances" good faith analysis in the instant case are not in dispute. On August 24, 1988 the debtors filed their petition for relief under Chapter 7. At the time, they reported a net income of $1,500 (solely from Mr. Strause's earnings), and monthly expenses of $1,716, which included $100 per month as a religious or charitable contribution. Mr. Strause was self-employed in a landscaping business, and Mrs. Strause was reportedly unemployed, although she had worked as recently as January, 1988.

In their schedules, the debtors disclosed that their residence was encumbered by first and second trust deeds totalling over $86,000. They claimed a market value for the property of $110,000, and declared their intent to retain the property. The debtors listed $13,500 in priority debt for unpaid wages to employees of the landscaping business, and $79,757.54 in unsecured debt. Much of the unsecured debt arose from the landscaping business (33 of the 77 obli-

gations listed, and totalling approximately $49,179 in amount).

On November 7, 1988 the second trust deed holders filed a motion for relief from stay. The debtors were in arrears for three pre-petition payments, and for the three post-petition payments which had come due. The first trust deed holder joined in the motion and reported similar arrearages. The debtors opposed the motion. While acknowledging the arrearages, and that the debt to the secured creditors had increased since the filing of the Chapter 7 petition, the debtors asserted they wanted to work out a way to pay the secured creditors. The debtors' opposition was filed November 18, 1988. After hearing on December 5, 1988 relief from stay was granted to both secured creditors. The order was lodged on December 6, 1988 and finally entered on December 23, 1988.

In the meantime, on December 14, 1988 the debtors filed the instant petition under Chapter 13. The only creditors listed were the first and second trust deed holders. The debtors listed the amounts due on those notes as totalling approximately $92,000, and again claimed a market value of the property of $110,000. Their Chapter 13 Statement disclosed that Mr. Strause had gone to work for a different landscape company around the beginning of October, 1988 and had a net income of $2,150. In addition, Mrs. Strause was reported to have been working for one month, with a net monthly income of $378.

The budget filed by the debtors showed that their expenses had increased dramatically, as well. Expenses were reported to total $2,321, with significant increases in food (from $250 to $450), clothing ($50 to $100), insurance ($0 to $105), transportation ($25 to $175), and recreation ($20 to $75). Both the Chapter 7 budget and the Chapter 13 budget took into account the combined almost $1,000 monthly payments due the first and second trust deed holders.

The debtors' Chapter 13 budget reported a surplus of $207 over expenses, and the debtors proposed a plan to pay down the real property arrearages of about $7,000 at $200 per month while making the post-petition payments directly to the creditors.

The second trust deed holder promptly submitted an ex parte application for relief from stay in the Chapter 13 case. The essential ground asserted was that the Chapter 7 case was still pending and the debtors should not be allowed to have two separate cases under different Chapters pending at the same time. The Chapter 13 Trustee and the debtors opposed the motion. After a hearing, this Court concluded that relief would not be granted on the ground asserted, and that the Chapter 13 filing should be tested by a good faith analysis. *In re Strause*, 97 B.R. 22 (Bankr.S.D.Cal.1989).

In their opposition to the ex parte motion, the debtors asserted, through their counsel, that they intended to pay all post-petition payments to the secured creditors as they came due, as well as the payments due the Chapter 13 Trustee.

Objections to confirmation of debtors' proposed plan were filed by the Chapter 13 Trustee, as well as the first and second trust deed holders. All challenged the debtors' good faith. In addition, the Chapter 13 Trustee questioned whether all disposable income was being applied to fund the plan.

On March 27, 1989 counsel for debtors filed a copy of a real property appraisal showing a market value of the property at $140,000. On March 30, 1989 debtors filed a "CORRECTED" partial Chapter 13 Statement, showing that Mrs. Strause had a net take home pay of $792 per month. The expense budget remained the same, but the debtors proposed a new plan to repay the real property arrearages at $400 per month, instead of the $200 originally contemplated. The amended budget disclosed a surplus of $621 per month, with a residual surplus of $221 after the proposed plan payment of $400 was subtracted.

In the meantime, on March 13, 1989 the debtors filed a motion in the Chapter 7 case to avoid two judgment liens totalling approximately $6,400 because those liens impaired the debtors' homestead exemption.

At the hearings on the objections to confirmation in April, 1989, the Court was advised that the debtors made no post-petition payments to either secured creditor or any plan payment to the Chapter 13 Trustee until March, 1989. However, it is the Court's understanding that the debtors did make up the missed payments at that time.

So far as the records of this court disclose, the Chapter 7 case filed by the debtors was properly filed. Their expenses exceeded their income; the majority of the debt was business, not consumer debt; and they had no apparent ability to fund a Chapter 13 plan at that time. See *In re Kelly*, 841 F.2d 908 (9th Cir.1988). There was no objection to discharge or to the dischargeability of any debt in the Chapter 7 case, and a discharge was ultimately filed on January 18, 1989.

In the meantime, Mr. Strause changed jobs and his income increased over $500 per month. Then Mrs. Strause went to work and the debtors' joint income rose to almost double the income reported in August, 1988. However, the debtors' expenses increased approximately $600 per month, although the increases are not related to the generation of the increased income. Rather, the Court was advised by counsel for the debtors that the revised budget more closely represented the debtors' actual expenditures.

It is clear that the efforts of the debtors resulting in increased income constitutes a change in circumstances specifically contemplated by the courts in *Metz*. 67 B.R. at 464, 466; 820 F.2d at 1498.

However, a significant factor distinguishing the instant case from *Metz* exists. In *Metz*, the Bankruptcy Court "determined that the debtor had shown his good faith by keeping the payments on his house current." 67 B.R. at 464. This Court has been unable to ascertain whether Metz made payments after filing his Chapter 7 petition, or only during the pendency of his two Chapter 13 cases. The Bankruptcy Appellate Panel tells us that payments were kept current during both Chapter 13's, at the least. 67 B.R. at 466. Moreover, as the Ninth Circuit observed, Metz's

"increased salary made it possible for the first time in the bankruptcy proceedings to propose such a cure." 820 F.2d at 1498;

In the instant case, the debtors always intended to retain their residence from the filing of their Chapter 7 case. They expressly so declared, in writing. Accepting that the debtors had insufficient income to make the payments required under the notes, as their Chapter 7 budget indicates, they made no payment to the first trust deed holder after May, 1988, and none to the second trust deed holder after April, 1988. After their Chapter 7 case was filed in August, 1988, and notwithstanding their avowed intent to retain their residence, they made no payments to either the first or second trust deed holders. Relief from stay was sought by both those creditors for debtors' defaults both pre-petition and post-petition. Debtors opposed the motions, expressing a desire to work something out, but made no payments. The Court notes that the debtors apparently experienced an increase in income in October, 1988 after Mr. Strause began his new job. According to the original budget filed by the debtors, his increased income, alone, would have permitted payments on the real property and left a significant surplus.

After relief from stay was granted in the Chapter 7 case, the debtors filed their Chapter 13 petition, showing the increased income and that their only creditors were the first and second trust deed holders. As already noted, the second trust deed holder promptly sought relief from stay. As part of their opposition, debtors asserted that they would make all payments as they came due post-petition. However, they made no payments to the secured creditors, or to the Chapter 13 Trustee in January or February, 1989. It was not until March, 1989 that any payments were made, although the debtors at all times had the apparent ability to make the payments, and had represented to the Court that they would do so. At the hearings, counsel for the debtors acknowledged that they had the ability to make those payments when they came due. This court believes the debtors have not dealt with the first and

second trust deed holders in good faith in this regard.

Another circumstance which is of concern to this court is the fact that debtors propose through their amended plan to cure what the creditors assert is approximately $9,000 in arrearages over time while retaining over $200 per month in budget surplus for themselves. The Chapter 13 Trustee objected both in writing and orally to debtors' failure to commit all disposable income to fund the plan.

There is still another event which this court believes reflects the debtors' lack of good faith in pursuing their Chapter 13 case. The Chapter 13 case was filed on December 14, 1988. Almost four months later, on March 13, 1989, the debtors filed a motion under 11 U.S.C. § 522(f) to avoid two judgment liens recorded against their residence, on the ground that the liens impair the debtors' homestead exemption. To be sure, the debtors are entitled under the applicable bankruptcy law to file such a motion. However, they chose to file the motion in the Chapter 7 case, not the Chapter 13.

The consequences to the judgment lien creditors are quite different, depending on whether the motion is filed in the Chapter 7 or the Chapter 13 case. If the motion is granted in a Chapter 7 case, the liens are avoided and the underlying debts are discharged unless a creditor can establish that its debt is nondischargeable under 11 U.S.C. § 523. See, *e.g., In re Yazzie,* 24 B.R. 576 (9th Cir. BAP 1982); *In re Ricks,* 89 B.R. 73 (9th Cir. BAP 1988). However, when a § 522(f) motion is granted in a Chapter 13 case, the lien is avoided and the creditor becomes an unsecured creditor eligible to participate in distributions under a debtor's plan to the same extent as other unsecured creditors. *In re Hall,* 752 F.2d 582, 290 (11th Cir.1985).

The instant case illustrates the distinction because the debtors have already received their discharge under Chapter 7. Their Chapter 13 plan, however, provides for 100% dividends to unsecured creditors, although their schedules did not list any.

Parenthetically, it should be noted that the debtors did not list the judgment lien creditors as creditors of the Chapter 13 estate although at the time of filing no steps had been taken to avoid those liens. Accordingly, those judgment lien creditors were secured creditors of the Chapter 13 estate at the time of filing, although not listed in the debtors' schedules.

As already noted, the debtors have the burden of establishing that their Chapter 13 plan is proposed in good faith. *In re Warren,* 89 B.R. 87, 93 (9th Cir. BAP 1988). This court concludes that they have failed to do so, although they were advised in writing by this court's prior memorandum decision filed February 8, 1989 that the burden was theirs. Accordingly, the debtors' amended plan dated March 30, 1989 is denied confirmation without leave to amend, and the case shall be, and hereby is, dismissed. Further, the motions of the first and second trust deed holders for relief from the automatic stay are granted. Lastly, the motion of the Chapter 13 Trustee to dismiss for failure of the debtors to attend the first § 341(a) meeting is denied.

The foregoing constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. The Chapter 13 Trustee shall prepare and submit a separate order of dismissal. Counsel for the first and second trust deed holders may lodge, in accordance with the rules of this Court, proposed orders granting relief from stay.

IT IS SO ORDERED.