In re Eddie D. STRAUSE and Robin A. Strause, Debtors.

Clifford HELBOCK and Otylia M. Helbock, Movants,

v.

Eddie D. STRAUSE, Robin A. Strause, Steven D. Petach, Federal National Mortgage Association, Hydro–Scape Products, Inc., and Ornamental Plant Sales, Inc., Respondents.

Bankruptcy No. 88–09553–LM13. RS No. 0018.

United States Bankruptcy Court, S.D. California.

Feb. 8, 1989.

Joe R. Sutter, San Diego, Cal., for movants.

Jeffery S. Styers, Rasmussen & Styers, San Diego, Cal., for respondents.

## MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

This case presents a troublesome issue regarding the viability of a Chapter 13 case filed while a Chapter 7 case involving the same debtors and debts is pending. The issue is raised by motion for relief from the automatic stay in the Chapter 13 case.

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

In April, 1987 the debtors borrowed $28,000, evidenced by a promissory note and second deed of trust. That note and deed of trust were assigned to the movants, the Helbocks, in May, 1987. In 1988 the debtors defaulted on the note, failing to make the May and June payments. On July 18, 1988 a notice of default was recorded by the Helbocks. The debtors also did not make the July, 1988 payment.

On August 24, 1988 debtors filed their petition for relief under Chapter 7 of Title 11, United States Code. In their schedules they reported that Mr. Strause generated a net income of $1,500 per month through his own business as a landscaper, and that Mrs. Strause was unemployed. The debtors' schedules also reflected monthly expenses exceeding $1700.

The debtors listed their residence, showing first and second trust deeds with a combined secured debt of $86,231. The debtors stated their intent to retain their residence, and claimed a market value of $110,000. The debtors listed priority debt of $13,500 for wages to employees of the landscaping business. In addition, they listed 77 unsecured creditors with combined claims totalling $79,757.54. Many of those debts were business debts from the landscaping operation (33 of the 77, but $49,179.07 of the total).

Thereafter, notice was given to all creditors of both the § 341 meeting and that the last date for filing complaints objecting to

discharge or to determine the dischargeability of a particular debt was set as November 28, 1988. The trustee's report of no distribution was filed October 14, 1988.

On November 7, 1988 the Helbocks filed a motion for relief from the automatic stay. The motion alleged that debtors were in default on three pre-petition payments, and on all three post-petition payments. In addition, the debtors were in default for the same number of pre and post petition payments to the first trust deed holder. Furthermore, two judgments aggregating approximately $6400 had been recorded against the property, as well.

The motion for relief from the stay was heard on December 5, 1988, and relief was granted by order lodged December 6, 1988 and entered December 23, 1988. In the interim, no complaints objecting to discharge or asserting the non-dischargeability of any debt were filed.

On December 14, 1988 debtors filed another petition for relief in bankruptcy, this one pursuant to Chapter 13 of Title 11, United States Code. In their Statement they disclosed the existence of the Chapter 7 proceeding.

The Chapter 13 Statement reported that Mr. Strause was working for another company, and that he had been so employed for 2½ months. Mrs. Strause was now employed, also, and had been for one month. Mr. Strause's net monthly pay had risen to $2,150, and Mrs. Strause was bringing home $378 per month. Interestingly, the Strauses claimed a combined annual income for the preceding year of $30,000, and in their Chapter 13 budget their expenses had increased to $2,321 per month from the $1,716 per month listed in August, 1988. Importantly, the debtors listed as their only creditors the holders of the first and second trust deeds on their residence.

On December 22, 1988 the Helbocks filed another motion for relief from stay. The Helbocks' primary argument is that relief should be granted because the debtors improperly have two proceedings pending at the same time.

The Chapter 13 Trustee filed an opposition to the Helbocks' motion, pointing out that a "Chapter 20" is not per se impermissible in the Ninth Circuit, and cited *In re Metz,* 67 B.R. 462 (9th Cir. BAP 1986), *aff'd* 820 F.2d 1495 (9th Cir.1987).

The debtors also oppose relief from the stay and argue that their only purpose in filing the Chapter 13 case was to set up a plan to pay the arrearages on the first and second trust deeds. They acknowledge those two creditors are the only ones scheduled.

The question posed by the creditors' motion is what is the viability of a Chapter 13 case when the same debtors already have a Chapter 7 case pending. Several courts have been called upon to consider the question, and they have arrived at differing conclusions.

One line of cases is predicated on the Supreme Court's decision in *Freshman v. Atkins,* 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925). In that case, the debtor filed his first petition in 1915. He then applied for a discharge, but the referee recommended discharge be denied. After the referee's report was filed, the case lay dormant. Then, in 1922, the debtor filed a second petition, listing debts identified in the original petition, plus some new ones. The debtor again applied for a discharge, and this time the referee recommended it be granted. The court, however, took note of the earlier case and denied discharge as to the debts listed in the original petition, and granted discharge as to the new debts.

While noting that the trial and appellate courts had not followed the same lines of reasoning, the Court observed:

... [T]hey reach the same conclusion, which is, in effect, that the pendency of the first application precluded a consideration of the second in respect of the same debts. In this conclusion we concur. A proceeding in bankruptcy has for one of its objects the discharge of the bankrupt from his debts. In voluntary proceedings, as both of these were, that is the primary object. Denial of a discharge from the debts provable, or failure to apply for it within the statutory time, bars an application under a second

proceeding for discharge from the same debts.

269 U.S. at 122–123, 46 S.Ct. at 41–42.. The court explained further:

A proceeding in bankruptcy has the characteristics of a suit, and since the denial of a discharge, or failure to apply for it, in a former proceeding is available as a bar, by analogy the pendency of a prior application for discharge is available in abatement as in the nature of a prior suit pending, in accordance with the general rule that the law will not tolerate two suits at the same time for the same cause.

269 U.S. at 123, 46 S.Ct. at 42. Lastly, the court stated:

But the objection that the issue is already pending, as that it has been adjudged, goes to the right of the bankrupt to maintain the later application....

*Id.*

Many cases have followed the decision in *Freshman v. Atkins,* some with an explanation of what *Freshman* actually holds. In *Prudential Loan & Finance Co. v. Robarts,* 52 F.2d 918 (5th Cir.1931), the court recognized that the underpinnings of the *Freshman* decision rested on the proposition that failure of a debtor to apply for a discharge within the statutory time "gives rise to a judgment by default equal to one of express denial of the discharge." 52 F.2d at 919.

Perhaps the best explanation of *Freshman v. Atkins* was given by the Ninth Circuit Court of Appeals in *Holmes v. Davidson,* 84 F.2d 111 (1936). The court wrote:

The Supreme Court in *Freshman v. Atkins* (citation omitted) had under consideration the effect of a failure to apply for discharge in a pending bankruptcy proceeding upon a subsequent proceeding in bankruptcy. The Supreme Court in that case stated: "Denial of a discharge from the debts provable, or failure to apply for it within the statutory time, bars an application under a second

proceeding for discharge from the same debts...."

84 F.2d at 112. The court noted:

It is clear from cases cited above that if the bankrupt in a pending bankruptcy proceeding fails to apply for a discharge within the statutory time, he cannot be discharged in a subsequent proceeding from the debts scheduled and provable in the first proceeding from which he might have secured a discharge if he had made timely application therefor.

84 F.2d at 113. The court then explained the provisions of the applicable law.

The right to discharge in bankruptcy is not an unqualified right. It depends upon a compliance by the bankrupt with the statute which authorizes the discharge. One of the requirements is that he must present his application for discharge after the adjudication in bankruptcy, and within the twelve months' period thereafter or within an extension of that period not exceeding six months (11 U.S.C.A. § 32). It is uniformly held that a bankrupt cannot extend his time for making his application for discharge by the mere device of filing a second voluntary petition in bankruptcy. He cannot allow the time to file his petition for discharge to expire, and then file a new petition in bankruptcy and by so doing extend his time for making such application for an additional twelve months as to a debt scheduled in the first bankruptcy proceeding. (Citation omitted) In the application of this rule it is immaterial whether he filed an application for discharge in the first proceeding which was dismissed (citations omitted), or whether he failed to do so (citations omitted), for in any event, the legal effect on his right to a discharge as to debts scheduled in the first proceeding would be the same.

*Id. See also In re Schwartz,* 89 F.2d 172 (2nd Cir.1937).

As specifically articulated by some courts, the failure to obtain a discharge of debts within the statutory time limit was res judicata as to those debts. *Chopnick v. Tokatyan,* 128 F.2d 521, 522 (2nd Cir.

1942); *Perlman v. 322 West Seventy–Second Street Co.,* 127 F.2d 716, 718 (2nd Cir.1942); *In re Bishop,* 13 F.Supp. 905 (W.D.N.Y.1926); *In re Holman,* 104 F.Supp. 960, 963 (S.D.N.Y.1952).

Two important points should be stressed at this juncture. First, although the language of *Freshman v. Atkins* suggests two proceedings cannot be pending at the same time, that is not the holding of that decision. To the contrary, it should be recalled that the new debts scheduled in the second petition *were* discharged, notwithstanding the "pending" first proceeding. Second, in 1938 the Congress amended the applicable law through the Chandler Act. The amendments specifically changed the requirement of applying for a discharge within a specific period of time. As noted by the Second Circuit:

> Section 14 was amended in 1938 to provide that a petition in bankruptcy filed by any person except a corporation is to be considered an application for a discharge. 11 U.S.C.A. § 32, sub. a. The court then has the duty to fix a time for filing objections to discharge, with notice given to all interested parties. If no objections are filed, the discharge is automatically granted.

*Perlman v. 322 West Seventy–Second Street Co.,* 127 F.2d 716, 717 (2nd Cir.1942). See, also *In re Frey,* 95 F.Supp. 1007, 1008 (S.D.N.Y.1951). By the amendment, the rationale for the decision in *Freshman v. Atkins* was removed, because a failure to apply for a discharge within a specified time no longer constituted a denial of discharge which was res judicata as to the debts listed in the first proceeding.

Notwithstanding the foregoing, some courts have persisted in relying on *Freshman v. Atkins,* insisting that it holds that two cases cannot be pending at the same time. *In re Stahl, Asano, Shigetomi Associates,* 6 B.R. 232 (D. Haw 1980) involved a situation where a Chapter XII case under the Act had been filed, dismissed, and the dismissal was on appeal. While the appeal was pending, the debtors filed a new petition under Chapter 11 of the Code. Citing to *Freshman* the court asserted: "This action cannot be maintained while the earlier action is pending." The court offered no further explanation, but dismissed the second case. Other courts which have reached the same conclusion, and relied on the same proposition from *Freshman* (and relying on each other) include *Prudential Ins. Co. of America v. Colony Square,* 29 B.R. 432, 436–437 (W.D.Pa.1983); *In re Wead,* 38 B.R. 658, 659 (Bankr.E.D.Mo. 1984); *Prudential Ins. Co. of America v. Colony Square Co.,* 40 B.R. 603, 605 (Bankr.N.D.Ga.1984); *In re Smith,* 85 B.R. 872, 873–874 (Bankr.W.D.Okla.1988).

Independent of the wisdom of prohibiting two cases to be pending simultaneously, to the extent the principle is dependent upon *Freshman v. Atkins* and its progeny, this Court believes the cases following that line to be erroneously decided.

Other courts have also been confronted with the problem of subsequent filings while prior cases were still pending. They have arrived at different conclusions, but have done so without relying on *Freshman v. Atkins* or its progeny.

One of the cases to consider the question was *In re Robinson,* 18 B.R. 891 (Bankr.D. Conn.1982). In that case the debtor filed a Chapter 7 case in February, 1981. Discharge was entered May 14, 1981 and on June 15, 1981 the debtor filed a Chapter 13 case, listing only one secured creditor and a $91 unsecured telephone bill. The secured creditor brought a motion to dismiss the Chapter 13 case on the ground that it was not filed in good faith. As the court noted:

> Olin bases its first claim of bad faith on the fact that the debtor's Chapter 7 case was still pending when she filed her Chapter 13 petition. Based on the Chapter 7 trustee's representation, the court finds that the Chapter 7 case remained open only because of the steady flow of pleadings regarding the debtor's automobile. While the debtor's action of filing the Chapter 13 petition when the Chapter 7 case was still open is not to be viewed as a model for emulation, it does not require dismissal of this case.

18 B.R. at 893.

In the case of *In re Tauscher,* 26 B.R. 99 (Bankr.E.D.Wisc.1982), the facts were sim-

ilar to *Robinson,* with the variation that Tauscher's first case was filed under Chapter 13 and was later converted to a Chapter 7. A discharge was granted but the case remained open. A new Chapter 13 case was then filed, listing two creditors whose debts were nondischargeable in the Chapter 7. In addressing the question raised by two pending cases, the court wrote:

Over the years, there has been a truism in bankruptcy circles that a debtor cannot have two bankruptcy cases pending at the same time, and the court was itself concerned with the fact that Tauscher's present Chapter 13 petition was filed prior to the closing of the earlier Chapter 7 case. Aside from the questions of good faith or possibly abuse of process, however, the court has been unable to conceive of any legal or practical reason, and none has been suggested to it, as to why he should be barred from so filing. Under the Bankruptcy Act of 1898 [ss. 656(a)(3) and 14(c)(5)], his recent bankruptcy discharge would have barred him from obtaining confirmation of this composition plan, but that is not the case under the new Bankruptcy Code. See s. 1325.

26 B.R. at 101.

Approximately four months later Judge Schwartzberg rendered his decision in *In re Bumpass,* 28 B.R. 597 (Bankr.S.D.N.Y. 1983). In that case, debtors initially filed under Chapter 13, and the case was converted to Chapter 7. The secured creditor thereafter obtained relief from stay. Before the foreclosure proceedings were completed, the debtors were granted a discharge in the Chapter 7 case and promptly filed a new Chapter 13, the day before the foreclosure sale. The court noted that while the Chapter 7 case was still pending, the case was "still open only because the trustee has not yet filed a final report...." 28 B.R. at 598. The debtors argued that they "should not be penalized for conduct beyond their control." *Id.* After noting that the debtors could not reconvert the original case to Chapter 13, the court concluded.

The fact that the debtors have a Chapter 7 case pending in this court does not per se bar the debtors from filing a separate Chapter 13 case, provided that the debtors qualify for relief under Chapter 13.

28 B.R. at 599. In that case, the creditor had obtained relief from stay in the Chapter 7. The court indicated that the creditor would have to establish anew its right to relief from stay in a subsequent Chapter 13.

One month later, Judge Anderson decided *Associates Financial Serv. Corp. v. Cowen,* 29 B.R. 888 (Bankr.S.D. Ohio 1983). In *Cowen,* the debtors filed a Chapter 7 case, attended the § 341 hearing and the scheduled discharge hearing. Apparently, no discharge was entered at that time and the case dragged on for another seven months. At that point, and while the Chapter 7 was still pending, the debtors filed their Chapter 13 case. They noted in their schedules the existence of the Chapter 7 case, and listed three secured creditors. Their only unsecured creditor in the Chapter 13 was their Chapter 13 attorney. The *Cowen* court wrote:

The threshold question before the Court is whether Debtors may maintain simultaneous cases under both 11 U.S.C. Chapter 7 and 13. It is the determination of the court that a debtor may not maintain two simultaneous and separate bankruptcy proceedings.

29 B.R. at 894. In support of its conclusion, the Court reasoned:

The filing of a petition in bankruptcy creates an estate consisting of the debtor's property. 11 U.S.C. §§ 301, 541(a) and 1306. In Chapters 7 and 13, the property of the estate is administered as the *corpus* of a trust, and a disinterested trustee is routinely appointed to act as "the representative of the estate," with "capacity to sue and be sued" as such. 11 U.S.C. §§ 323, 701, 701, 703 and 1302. A debtor possesses only one estate for purposes of trusteeship. Abandonment to a debtor by a Chapter 7 trustee does not create a second administrable estate while such trustee is still serving in his capacity as representative of the estate at large. Instead, the debtor's rights in the property are derivative from the

Chapter 7 trustee's rights, which the trustee administered under his fiduciary duties to the estate.

The filing of two simultaneous petitions is contrary to the obvious contemplated function of the Bankruptcy Code to resolve debtors' financial affairs by administration of a debtor's property as a single estate under a single Chapter within the Code. 11 U.S.C. §§ 103, 301, 302 and 303. The Bankruptcy Code provides different discharge remedies in different Chapters, and such remedies are intended to be exclusive for each estate. 11 U.S.C. §§ 103, 301, 523, 727 and 1328.

*Id.* The *Cowen* court then concluded that the "Debtors' Chapter 13 Petition is nullity." *Id.* The court felt that it could not "determine a date at which Debtors' were *de facto* discharged in their Chapter 7 proceeding...." *Id.* For the foregoing reasons, the court opined:

On the date of their Chapter 13 filing, the only procedural means to accomplish a Chapter 13 proceeding would have been either to convert to Chapter 13 or to request dismissal of the Chapter 7 proceeding for the purpose of a subsequent Chapter 13 filing.

29 B.R. at 895.

After setting out the foregoing, the *Cowen* court then stated:

The "serial" filing of a successive Chapter 13 petition may not be permitted until, at the earliest, after the granting of the discharge in the prior Chapter 7 proceeding. (Citations omitted) If the essence of the successive use of Chapter 13 process is to restructure only debt which survived an earlier Chapter 7 proceeding, several courts have held that such filing reflects upon good faith, and would likely be impermissible absent an intervening change in circumstances.

Reasoning similar to part of that relied upon by the *Cowen* court was advanced by the Ninth Circuit Bankruptcy Appellate Panel in *In re Berg,* 45 B.R. 899 (1984). In that case, a debtor had filed a case under the Act in 1975. He did not list the subject property because the property was not held in his name. Subsequently, a state court

judgment held that title was vested in debtor and had been in 1975. After that determination, debtor moved to reopen his Act case. He also filed a new case under Chapter 7 and a trustee was appointed. The issue of two estates came up in the context of the Chapter 7 trustee's suit to quiet title to the property, claiming it as an asset of the Chapter 7 estate. On review, the court concluded the property was an asset of the Act case, even though the trustee in that case hadn't known of its existence. Quoting from *Stein v. United Artists Corp.,* 691 F.2d 885, 890–891 (9th Cir.1982), the court stated:

"By operation of law, the trustee is vested with title to all of the bankrupt's property at the time the bankruptcy petition is filed.... Unless property is abandoned or intentionally revested, title generally remains in the trustee. Abandonment requires affirmative action or some other evidence of intent by the trustee...."

45 B.R. at 903. The court then concluded:

The Act and Code estates are two separate and distinct entities which are exclusive of one another. This property cannot be an asset of both estates simultaneously.

*Id.*

*In re Nimai Kumar Ghosh,* 38 B.R. 600 (Bankr.E.D.N.Y.1984) involved a debtor who filed a petition under Chapter 7. The case was converted to Chapter 13, and subsequently reconverted to one under Chapter 7. The matter came before the court on the debtor's motion to reconvert to Chapter 13. After concluding that 11 U.S.C. § 706 precluded the debtor from converting to Chapter 13 a second time, Judge Duberstein wrote:

However, in spite of the fact that the debtor is barred from converting his Chapter 7 case he may file a new Chapter 13 petition during the pendency of his Chapter 7 case. (Citations omitted) If he chooses that course of action, the debtor will be obligated to satisfy all the requirements of a Chapter 13 petition including demonstrating good faith, (cita-

tion omitted) and an ability to adequately fund a plan.

38 B.R. at 604. In *Matter of Iberis Intern., Inc.,* 72 B.R. 624, 628 (Bankr.W.D. Wisc.1986), the debtor had two cases pending at the same time, one under Chapter 7 and one under Chapter 11, involving "essentially the same debts...." After citing *Freshman v. Atkins* and supporting decisions, the court decided to dismiss the *earlier* Chapter 7, reasoning that:

> It is in the best interests of the debtor because more debt will be dealt with under today's conversion order than would have been administered under the order for relief filed last April pursuant to the debtor's chapter 7 petition. *See* 11 U.S.C. § 348(d). It is also in the best interests of creditors since some may have administrative expense claims for preconfirmation loans under the converted chapter 7 case which they would be unable to assert under the debtor's chapter 7 filing.

72 B.R. at 628. Obviously, the court was not persuaded that the existence of the previously filed Chapter 7 case rendered a subsequent filing under Chapter 11 a nullity.

This Court is persuaded that the statutory framework which resulted in the *Freshman v. Atkins* decision no longer exists. Moreover, that case never held, on its facts, that a debtor could not have two petitions pending simultaneously. Accordingly, the cases which follow *Freshman* are inapposite.

■ Instead, this Court concludes that a debtor who has received a discharge in a case under Chapter 7 is not prohibited from filing a subsequent case under Chapter 13 although the Chapter 7 case remains open. Accord, *In re Robinson,* 18 B.R. 891 (Bankr.D.Conn.1982); *In re Tauscher,* 26 B.R. 99 (Bankr.E.D.Wisc.1982); *In re Bumpass,* 28 B.R. 597 (Bankr.S.D.N.Y. 1983); *In re Nimai Kumar Ghosh,* 38 B.R. 600 (Bankr.E.D.N.Y.1984). The viability of the subsequent petition under Chapter 13 should be assessed in light of the standards applicable to Chapter 13 cases generally and, more particularly in light of the debt-

or's good faith. *Id.; In re Goeb,* 675 F.2d 1386 (9th Cir.1982); *Matter of Metz,* 820 F.2d 1495 (9th Cir.1987).

The instant case presents an additional factor not discussed in the other cases, except *Cowen.* In this case, the time within which to object to debtors' discharge under Chapter 7 had passed, but for reasons beyond the debtors' control no discharge had been entered when the debtors filed their Chapter 13 proceeding.

■ In the case at bar, the creditors were given notice that the last date for filing complaints objecting to discharge or to determine the dischargeability of a particular debt was November 28, 1988. Bankruptcy Rule 4004(c) provides in pertinent part: "In a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge, the court shall forthwith grant the discharge...." No complaints objecting to discharge were filed, the debtors are individuals, and the debtors did not file a waiver of discharge or a motion to delay entry of the discharge. Accordingly, as of November 29, 1988 the debtors were entitled to have a discharge entered forthwith. The only reason a discharge was not entered prior to December 14, 1988, when the Chapter 13 case was filed, is because of the court's administrative procedures, coupled with backlog.

To the extent there are cases where it is appropriate for a debtor to file a Chapter 13 case after a discharge in a Chapter 7, as the Ninth Circuit Court of Appeals has indicated there may be [see *Matter of Metz,* 820 F.2d 1495 (1987)], precluding debtors from filing a subsequent Chapter 13 solely because a discharge had not been entered would penalize debtors for circumstances beyond their control. See *In re Bumpass,* 28 B.R. 597 (Bankr.S.D.N.Y.1983). Accordingly, where debtors are entitled to entry of a discharge pursuant to Rule 4004(c), this Court will not require actual entry of a discharge prior to filing the subsequent Chapter 13 if the only reason for the delay is the court's administrative process. This result is not inconsistent with *In re Berg,* 45 B.R. 899 (9th Cir. BAP 1984) because in this case the Chapter 7 trustee took the

affirmative step of filing his final report on October 14, 1988, two months before the Chapter 13 was filed.

The foregoing addresses the thrust of the creditor's present motion for relief from the automatic stay. However, the creditor has also urged that it is not adequately protected because debtors have made no payments on the property since May, 1988. In addition, the creditor argues that the property is not essential to an effective reorganization. As to the latter, the Court is unpersuaded, inasmuch as the debtors appear to have some equity in the property, which is their personal residence.

The issue of adequate protection is more troublesome. The Court is concerned that notwithstanding an avowed intent to keep their residence, expressed in their Chapter 7 filing, the debtors still made no payments to the secured creditors after filing the Chapter 7 petition. Instead, arrearages have continued to accrue up to the filing of the Chapter 13 petition. At the time of the hearing on this matter, the first post-petition payment was arguably not yet due. The debtors represented through their counsel that they intended to make the payment when it did come due.

The moving creditor has accepted, for purposes of the motion, the debtors' valuation of the property at $110,000. The creditor asserts that the first trust deed holder is owed $63,456.26, and the second, $28,000 plus $3,968.39 in arrearages. Additionally, two judgments are recorded against the property for $2,157.76 and $4,271.11. The total of the encumbrances thus is $101,-853.63. Even the debtors' Chapter 13 Statement lists the totals of the two trust deeds at $92,000. Assuming the judgment liens will be discharged in the Chapter 7 case, the encumbrances total $95,424.65 according to the creditor's figures. Assuming costs of sale at 8%, the debtors have less than $7,000 equity in the property, or about 6% of the value of the property. Given the history of debtors' performance on the secured notes over the past eight months, this Court concludes that a 6% equity margin is insufficient, in itself, to adequately protect the Helbocks on their

note and second trust deed. It is conceivable that the debtors can provide a measure of adequate protection through their Chapter 13 plan, however. This Court expresses no opinion on whether the presently proposed plan meets that test. Instead, because there is a small margin of equity, the Court will continue this relief from stay hearing to the confirmation hearing. At that time, the question of whether the plan provides adequate protection for this creditor will be resolved.

The Court notes that an objection to confirmation of the Chapter 13 plan has been filed by the first trust deed holder, challenging whether the Chapter 13 filing is a "good faith" filing as required by 11 U.S.C. § 1325(a)(3). At the confirmation hearing the debtors will have the burden of establishing "good faith". *In re Warren*, 89 B.R. 87, 93 (9th Cir. BAP 1988). The *Metz* decisions affirm that "good faith" is a determination to be made by the court on a case-by-case basis, examining in part the pre-petition and post-petition conduct of the debtors. Inasmuch as "good faith" has not been raised by the moving creditor in this motion, this Court expresses no opinion at this juncture as to whether the debtors' filing in this case meets the "good faith" test.

For the foregoing reasons, the motion for relief from stay is continued to the same date and time as the confirmation hearing.