**In re STUDIO FIVE CLOTHING STORES INC., Debtor.**

**Bankruptcy No. LA–95–37903–KM.**

United States Bankruptcy Court, C.D. California.

March 1, 1996.

Ron Marokos, Office of the U.S. Trustee, Los Angeles, CA.

Michael S. Abrams, Danning, Gill, Diamond & Kollitz, LLP, Los Angeles, CA.

Gregory Lunt, Latham & Watkins, Los Angeles, CA.

Thomas Zide, Zide & O'Biecunas, Los Angeles, CA.

Benjamin S. Seigel, Katz, Hoyt, Seigel & Kapor, Los Angeles, CA.

David W. Levene, Levene, Neale & Bender, Los Angeles, CA.

Bruce S. Schildkraut, Pillsbury, Madison & Sutrow, Los Angeles, CA.

Brad D. Krasnoff, Lewis, D'Amato, Brisbois & Bisgaard, Costa Mesa, CA.

R. Gibson Pagter, Jr., Pagter Law Corporation, Santa Ana, CA.

## OPINION ON COURT'S ORDER TO SHOW CAUSE WHY PRESENT CHAPTER 7 CASE SHOULD NOT BE DISMISSED DUE TO THE FACT THAT THIS DEBTOR HAS A CHAPTER 11 CASE STILL OPEN

KATHLEEN P. MARCH, Bankruptcy Judge.

### I. INTRODUCTION

Studio 5 Clothing Stores, Inc.[1] ("Debtor") is a California Corporation. In 1993, Debtor operated a chain of women's retail clothing stores. On July 12, 1993, Debtor filed a voluntary Chapter 11 bankruptcy, Case No. LA–93–34546–KM. On September 16, 1994 this Court confirmed a Chapter 11 Plan in that case.

Debtor's Chapter 11 Plan was a "reorganizing/operating" Plan, which provided for the reorganized Debtor to continue operating various stores and to make the Chapter 11 Plan payments from certain exit financing and from projected post-confirmation operating profits. Debtor was thus eligible to receive a discharge, and Article 9.2 of Debtor's Plan granted Debtor a discharge, pursuant to 11 U.S.C. § 1141(d), on the effective date of the confirmed Plan.

Debtor continued to operate its business during the remainder of 1994 and in 1995.

---

[1]. Debtor's name is spelled incorrectly in this case. Debtor's name is actually "Studio 5 Clothing Stores, Inc." with "5" as a numeral, instead of "Studio Five Clothing Stores Inc.", with "Five" spelled out. The petitioning creditors who filed this involuntary Chapter 7 petition misspelled Debtor's name.

On October 27, 1995 a second bankruptcy case, an involuntary Chapter 7, was commenced by various petitioning creditors, with Debtor as respondent. When the involuntary Chapter 7 case was filed, Debtor's original Chapter 11 case was still open in this District. Though the Chapter 11 Plan had been confirmed, no final decree had ever been applied for or granted in the Chapter 11 case. Thus, to date, the Chapter 11 case is still open.

Respondent Studio 5 Clothing Stores, Inc. did not answer the petition in the new, involuntary Chapter 7 case. Therefore, on December 8, 1995, this Court entered the Order for Relief in the Chapter 7 case, pursuant to 11 U.S.C. § 303(h). This Court then *sua sponte* issued its present Order to Show Cause to require all parties in interest to brief the question of whether or not Debtor's present Chapter 7 case must be dismissed because the earlier Chapter 11 case is still open.

## II. ISSUE PRESENTED

The sole issue presented by this Order to Show Cause is whether or not Debtor's present Chapter 7 case must, or should, be dismissed because Debtor's prior Chapter 11 case is still open.

Both the Chapter 7 trustee, David A. Gill, and the Debtor have briefed this issue, arguing that Debtor's present Chapter 7 case does *not* have to be dismissed. The Court has reviewed the briefing of the parties and has conducted its own research.

## III. RULING

The Court rules as follows: On the facts presented in this case, the present Chapter 7 case does *not* have to be dismissed merely because this Debtor has a prior Chapter 11 case that is still open. The Court therefore dismisses its own Order to Show Cause.

This Opinion constitutes the Court's Findings of Fact and Conclusions of Law. The Court has prepared an Order dated the same date as this Opinion.

2. *See also,* C.D.Cal.Local Rule 104(4)(b)(ii)(A).

## IV. ANALYSIS

### A. EXAMINATION OF APPLICABLE STATUTORY LAW

The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (hereinafter "Bankruptcy Rules") are the appropriate starting point to establish whether a single debtor may have two bankruptcy cases open at the same time. However, there is no provision in the Bankruptcy Code or Rules which expressly prohibits having two bankruptcy cases open at the same time. In fact, Bankruptcy Rule 1015 suggests that in some situations, a debtor may have two cases open at the same time. Bankruptcy Rule 1015(a) states, "[i]f two or more petitions are pending in the same court by or against the same debtor, the court may order consolidation of the cases." [2] The Editor's Comment to the Advisory Committee Note (1987) for Bankruptcy Rule 1015 states that multiple petitions filed in the same court and involving the same debtor is not an infrequent occurrence. As further explained by the Advisory Committee Note (1983) following Bankruptcy Rule 1015, subdivision (a) of the rule applies to cases where "the same debtor is named in both voluntary and involuntary petitions, when husband and wife have filed a joint petition pursuant to § 302 of the Code, and when two or more involuntary petitions are filed against the same debtor."

Bankruptcy Code Section 109(g) also addresses the filing of multiple cases, but only applies in very narrow circumstances not relevant here. Section 109(g) provides:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title at any time in the preceding 180 days if (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

It is clear from the text of Section 109(g) that this section never involves the situation of the second case being open while the first case is still open, since this Section only applies where the first case has been dismissed. However, if Congress had wished to prohibit having more than one case open at the same time, Section 109 would have been the logical place to insert such a prohibition in the Bankruptcy Code. Congress did not do so.

Bankruptcy Code Sections 727(a)(8) and 727(a)(9) restrict a debtor's ability to obtain a discharge in a subsequent bankruptcy case, when the debtor has already received a discharge in an earlier case. However, both these sections only forbid granting multiple discharges; they do not forbid the filing of multiple cases. Bankruptcy Code Section 727(a)(8) precludes a debtor from receiving a discharge in a subsequent Chapter 7 case if the debtor has received a discharge in an earlier Chapter 7 or 11 case, and if the earlier case was commenced within 6 years of the date the later case is commenced. 11 U.S.C. § 727(a)(8); *See In re Keen,* 121 B.R. 513, 514 (Bankr.W.D.Ky.1990). Similarly, Bankruptcy Code Section 727(a)(9) precludes a debtor from obtaining a discharge in a Chapter 7 case (with some exceptions not relevant here), if the debtor has received a discharge in an earlier Chapter 12 or 13 case, when the earlier case was commenced within 6 years of the date the later case is filed. 11 U.S.C. § 727(a)(9).

## B. THE LEADING CASES ON HAVING TWO BANKRUPTCY CASES OPEN AT THE SAME TIME

The research of the Court and the parties, on the issue of whether or not it is permissible to have two bankruptcy cases open simultaneously, reflects that the leading cases are: (1) a United States Supreme Court case decided under the Bankruptcy Act, *Freshman v. Atkins,* 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925); (2) a 1990 Ninth Circuit Bankruptcy Appellate Panel case, *In re Grimes,* 117 B.R. 531 (9th Cir. BAP 1990); (3) a 1989 Seventh Circuit case, *In re Jartran, Inc.,* 886 F.2d 859 (7th Cir.1989), *aff'g* 87 B.R. 525 (N.D.Ill.1988), *aff'g* 71 B.R. 938 (Bankr. N.D.Ill.1987); and (4) cases discussing the issue of good faith in filing multiple bankruptcies, such as *In re Metz,* 820 F.2d 1495 (9th Cir.1987), *aff'g* 67 B.R. 462 (9th Cir. BAP 1986), *In re Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986), and *In re Can–Alta Properties,* 87 B.R. 89 (Bankr. 9th Cir.1988).

None of these cases are directly on point, in that *none* involve the fact situation present in this case—a Chapter 11 case still open, followed by filing of an involuntary Chapter 7 case, where the debtor cannot possibly be eligible to receive a discharge in the subsequent Chapter 7 case because it is a corporation. In fact, this Court did not find any reported decisions dealing with the filing of a Chapter 11 followed by a Chapter 7, with the Chapter 11 still open. However, though not directly on point, the above cases provide legal principles which are helpful in analyzing the situation presented here.

### 1. *ATKINS,* AND CASES TRYING TO INTERPRET *ATKINS:*

The *Freshman v. Atkins* United States Supreme Court case, 269 U.S. 121 (1925), is considered by some to prohibit having two bankruptcy cases open at the same time, but in fact the case did not so hold. However, *Atkins* only held that a debtor who had sought but failed to get a discharge of certain debts in its first bankruptcy case could not seek a discharge of those same debts in a second bankruptcy case. *Id.* at 123, 46 S.Ct. at 41–42.

In *Atkins,* the debtor first filed a bankruptcy case on November 1, 1915 and then filed a second petition on November 11, 1922, while the first case was still open. *Id.* at 122, 46 S.Ct. at 41. Under the then applicable Bankruptcy Act, a debtor had to affirmatively apply for a discharge to receive one. *Id.* at 123, 46 S.Ct. at 41–42. Debtor applied for but did not receive a discharge in its first case. The referee in the first case recommended denial of discharge but the District Court did not act on the recommendation, and therefore did not either grant or deny a discharge. Debtor then filed the second bankruptcy case. Debtor applied to receive a discharge in the second case, not only as to

debts incurred subsequent to the first case, but also as to the *same debts* which had been included in the first petition. *Id.* at 122, 46 S.Ct. at 41.

The District Court, on its own initiative, took judicial notice of the pendency of the former application for discharge (which had never been adjudicated), and denied debtor's application for discharge in the second case *as to debts included in the first petition only.* *In re Freshman,* 290 F. 609, 610–11 (N.D.Tex.1923). The District Court granted discharge as to those claims in the second case which had not been included in the petition in the first case. *Id.* The Court of Appeals affirmed. *Freshman v. Atkins,* 294 F. 867 (5th Cir.1923).

The United States Supreme Court affirmed the Court of Appeals' refusal to discharge, in the second case, debts which had been the subject of the request for discharge in the first case. The United States Supreme Court affirmed on the *procedural* ground that a court will not consider a later request for a discharge which has been the subject of an earlier request for discharge. *Atkins,* 269 U.S. at 123, 46 S.Ct. at 41–42. It is worthwhile to quote, at some length, exactly what the United States Supreme Court stated, because this language in *Atkins* has been characterized too broadly in subsequent case law, adding to the general confusion as to what the law on this subject is:

> [T]he pendency of the first application [for discharge] precluded a consideration of the second in respect of the same debts.... Denial of a discharge from the debts provable, or failure to apply for it within the statutory time [in the first bankruptcy case], bars an application under a second proceeding for discharge from the same debts (citations omitted). A proceeding in bankruptcy has the characteristics of a suit, and since the denial of a discharge, or failure to apply for it, in a former proceeding, is available as a bar, by analogy the pendency of a prior application for discharge is available in abatement as in the nature of a prior suit pending, in accordance with the general rule that the law will not tolerate two suits at the same time for the same cause.... The refusal to

discharge [the debts from the first bankruptcy case in the second bankruptcy case] was not on the merits, but upon the *procedural ground* that the matter could not properly be considered or adjudged, except upon the prior application [for discharge made in the first bankruptcy case]. This application had been reported upon adversely by the referee, was still pending, and, in ordinary course, could have been considered and acted upon by the court [in the first case]. To ignore it, and make a second application, involving a new hearing, was an imposition upon and an abuse of the process of the court, if not a clear effort to circumvent the statute by enlarging the statutory limitation of time within which an application for a discharge must be made (emphasis added).

*Id.* at 122–24, 46 S.Ct. at 41–42.

The quote from *Atkins* that "the law will not tolerate two suits at the same time for the same cause" (*Id.* at 123, 46 S.Ct. at 41–42), referred to not allowing a *second* application to *discharge* debts that were already the subject of an *earlier* application to *discharge* those same debts.

Unfortunately, some courts took the phrase "the law will not tolerate two suits at the same time for the same cause" out of context and concluded that *Atkins* stood for the proposition that a debtor cannot have two bankruptcy cases open at the same time. *See, e.g., In re Stahl, Asano, Shigetomi Associates,* 6 B.R. 232 (Bankr.D.Haw.1980) (holding that a second bankruptcy case cannot be maintained while an earlier bankruptcy case is still pending and citing to *Atkins* as authority for this proposition); *Prudential Ins. Co. of America v. Colony Square,* 29 B.R. 432, 436–37 (W.D.Pa.1983); *In re Wead,* 38 B.R. 658, 659 (Bankr.E.D.Mo.1984).

Such an interpretation is contrary to the result in *Atkins,* since the United States Supreme Court did not dismiss the second bankruptcy case in *Atkins.* In fact, the United States Supreme Court discharged, in the second case, those debts that were *not* debts treated in the first bankruptcy case. *Atkins,* 269 U.S. at 124, 46 S.Ct. at 42.

Other cases have correctly construed *Atkins*, noting that "the [*Atkins* ] case never held, on its facts, that a debtor could not have two petitions pending simultaneously." *See, e.g., In re Strause*, 97 B.R. 22, 29 (Bankr.S.D.Cal.1989); *In re Tauscher*, 26 B.R. 99, 101 (Bankr.E.D.Wis.1982). As the Court explained in *Tauscher*, "[o]ver the years, there has been a truism in bankruptcy circles that a debtor cannot have two bankruptcy cases pending at the same time," but "[a]side from the questions of good faith or possibly abuse of process, however, the court has been unable to conceive of any legal or practical reason … as to why he should be barred from so filing." *Tauscher*, 26 B.R. at 101.

It should also be noted that *Atkins* is technically not controlling because it was a case under the prior Bankruptcy Act, not the present Bankruptcy Code. *See Strause*, 97 B.R. at 29 (stating that "the statutory framework which resulted in the *Atkins* decision no longer exists," referring to the fact that after *Atkins*, Congress amended applicable law so that the bankruptcy petition served as an application for a discharge, and debtors no longer had to separately apply for a discharge). However, since neither the prior Bankruptcy Act nor the present Bankruptcy Code has any provision expressly addressing having more than one case open at the same time, *Atkins* would still seem to be good law.

In the present case, Debtor is not violating the holding in *Atkins* because, as will be discussed *infra* Section IV.C., Debtor is not seeking to discharge *any* debts in its second case.

## 2. *GRIMES:*

The Ninth Circuit Bankruptcy Appellate Panel in *In re Grimes*, 117 B.R. 531 (9th Cir. BAP 1990), correctly interpreted *Atkins* in so far as pointing out that *Atkins* never said that two bankruptcy cases cannot be pending at the same time. *Id.* at 536. However, *Grimes* went beyond *Atkins*, articulating a new test for whether a debtor can have two cases open at the same time. The new rule articulated by the BAP in *Grimes* is that a debtor can only file a second case with the

first case still open if the debtor had already received a discharge in the first case. *Id.*

In *Grimes*, the debtor first filed a Chapter 11 case, and confirmed a Chapter 11 plan. Before the Chapter 11 plan was substantially consummated, the debtor filed a Chapter 12 (family farmer) case. The bankruptcy court dismissed the second case, relying on *Atkins*, concluding that "debtors cannot have two pending bankruptcy proceedings seeking discharge of the same obligations." *Id.* at 532. The BAP reversed the Bankruptcy Court. The BAP agreed with the view of the court in *Strause* that "although the language of *Freshman v. Atkins* suggest two proceedings cannot be pending at the same time, that is not the holding of that decision." *Id.* at 534 (quoting *Strause*, 97 B.R. at 26).

However, the BAP in *Grimes* went on to hold that "a debtor who has been granted a discharge under one chapter … may file a subsequent petition under another chapter even though the first case remains open, as long as the debtor meets the requirements for filing the second petition." *Id.* at 536. (Of course, good faith, as discussed *infra* Section IV.E., is always one of the requirements for filing a second, or even a first, case.) The BAP reasoned that "the statutory framework which resulted in the *Freshman [Freshman v. Atkins ]* decision no longer exists, and that the case never held, on its facts, that a debtor could not have two petitions pending simultaneously, and therefore the line of cases following Freshman are inapposite." *Id.* (quoting *Strause*, 97 B.R. at 29).

While the BAP announced its holding—that a debtor could only maintain a second case with the first case still open if the debtor had received a discharge in the first case—the BAP did not explain *why* the discharge was necessary or made sense, or what the authority was supporting this result. The BAP cited to *Atkins* for this proposition, but *Atkins* had not so held, as discussed *supra.* Nor did the BAP in *Grimes* cite to any other authority for its holding requiring a discharge, other than citing to the *Strause* case, which had also not explained why there should be such a requirement. Moreover, as discussed *supra* Section IV.A., no such re-

quirement appears in the Bankruptcy Code or Rules.

In short, *Grimes* has no authority for why receiving a discharge, before filing the second case, should be required. However, Debtor's second case is within the holding of *Grimes,* because Debtor had received a discharge (through the Plan in its Chapter 11 case) over one year before its second, Chapter 7 case, was filed.

### 3. *JARTRAN:*

■ The *Jartran* Circuit, District and Bankruptcy Court decisions permit having two cases open at the same time, under certain circumstances. *In re Jartran, Inc.,* 886 F.2d 859 (7th Cir.1989), *aff'g* 87 B.R. 525 (N.D.Ill.1988), *aff'g* 71 B.R. 938 (Bankr. N.D.Ill.1987). The *Jartran* decisions teach us that where the Chapter 11 plan proposed in a second Chapter 11 case is not a reorganizing plan, and thus provides for a necessary liquidation of the business, the second case has not been filed for an improper purpose, and does not have to be dismissed. *Jartran,* 886 F.2d at 869.

Though out of Circuit, the *Jartran* decisions are most closely on point. In *Jartran,* the debtor filed a Chapter 11 case and confirmed a reorganizing Chapter 11 plan ("Jartran I"). The debtor performed the plan for a period of time, resulting in substantial consummation, and then defaulted on plan payments. Approximately 1 year and 5 months after its plan was confirmed in the first Chapter 11 case, the debtor filed a second Chapter 11 case ("Jartran II"). The first case was still open at the time the second Chapter 11 case was filed. The debtor sought to confirm a liquidating Chapter 11 plan in the new case. *Jartran,* 71 B.R. at 939–40.

A creditor from the first case moved to dismiss the second case on the grounds that the new Chapter 11 case was in effect an attempt to modify an existing Chapter 11 plan which had already been substantially consummated. The creditor argued that because a Chapter 11 plan cannot be modified after it has been substantially consummated, the new Chapter 11 case should be dismissed. The creditor also moved to have the

first case (with the defaulted plan) converted to Chapter 7. *Id.* at 940.

The bankruptcy court refused to dismiss the second case, and refused to convert the first case (with the defaulted plan) to Chapter 7. The bankruptcy court stated that it did not view the second Chapter 11 case as a continuation of the first case, but rather that the two bankruptcy cases were "separate cases characterized by different objectives, assets and claims." *Id.* at 941.

The bankruptcy court noted that in Jartran I, the objective of the case was to reorganize and continue the debtor's pre-petition nationwide trailer and truck rental business under restructured financial obligations. The Court also noted that upon confirmation of the first plan, the debtor was discharged of its pre-petition debts and assumed obligations as stated in the plan, was revested with its property, and commenced renting trucks and trailers. *Id.*

On the other hand, Jartran II "is a new case with assets, liabilities, and objectives different than those of Jartran I. Jartran II is not an attempt to modify the terms of the Plan, but rather is a good faith admission that Jartran was unable to continue operating as a going concern. Jartran II and Hall [a creditor] have submitted a Joint Plan ... which calls for selling the assets of Jartran II pursuant to § 1123(b)(4) and making distributions to holders of claims." *Id.* at 942.

The District Court affirmed the Bankruptcy Court. *In re Jartran, Inc.,* 87 B.R. 525 (N.D.Ill.1988). The Seventh Circuit Court of Appeals affirmed the District Court, adopting the reasoning of the Bankruptcy Court, and holding that a debtor whose original plan of reorganization has failed may file a new liquidating Chapter 11 case instead of converting the original case to Chapter 7 for liquidation. *Jartran,* 886 F.2d at 867–68.

Debtor Studio 5's second bankruptcy case is easier to justify under this rationale than was Jartran II. This is so because Debtor Studio 5's second case is a Chapter 7 case (always a liquidating Chapter), whereas Jartran II was a Chapter 11 case (not always a liquidating chapter). Also, there is no plan in a Chapter 7 case, so the argument made in

Jartran II—that the second Jartran Chapter 11 plan was an impermissible modification of the substantially consummated first Jartran Chapter 11 plan—cannot be made in the present Studio 5 Chapter 7 case.

## C. WHETHER A DEBTOR RECEIVED A DISCHARGE OR NOT IN ITS CHAPTER 11 CASE SHOULD NOT BE CONTROLLING AS TO WHETHER OR NOT IT CAN HAVE A SUBSEQUENT CHAPTER 7 CASE

In *Grimes* and *Strause,* the controlling factor as to whether a debtor is entitled to file a second case with the first case still open, is whether or not the debtor received a *discharge* in the first case. However, focusing on whether or not the debtor has received a discharge in its earlier case as being determinative of whether or not a debtor should be allowed to file the second case with the first case still open is a "red herring" on the facts of the present case.

■ Debtor Studio 5 is *not* seeking, and is *ineligible* to seek, a discharge in the present Chapter 7 case. Debtor is a corporation, and corporations are always ineligible for a discharge in Chapter 7. 11 U.S.C. § 727(a)(1). The BAP in *Grimes* spent much time discussing the discharge issue, and apparently would not have allowed the later Chapter 12 case to be maintained with a prior Chapter 11 case still open, *but for* the fact that the debtor had already received a discharge in the Chapter 11 case. *Grimes,* 117 B.R. at 536. This analysis may have made some sense in the *Grimes* situation, since the debtor in *Grimes* could seek a discharge in both Chapter 11 and Chapter 12. However, since a corporate debtor such as Debtor Studio 5 can *never* be eligible for a discharge in a Chapter 7 case, due to 11 U.S.C. § 727(a)(1), it is much less relevant whether such a corporate debtor has or has not received a discharge in the still open Chapter 11 case.

In fact, the only relevance this Court can perceive as to whether or not the debtor has received a discharge in the first case is that, without knowing what was or was not discharged in the first case, it is hard to determine *how much* debt exists to be dealt with in the second case. This may be a problem, but it should not be viewed as a *per se* bar on the filing of a second case with the first case still open. Certainly the United States Supreme Court in *Atkins* did not arrive at such a result. The United States Supreme Court in *Atkins* did *not* dismiss the second bankruptcy case. The Court merely refused to allow debt that was the subject of an application for discharge in the *first* case to be discharged by application for discharge made in the *second* case. *Atkins,* 269 U.S. at 123, 46 S.Ct. at 41–42.

Given the foregoing, the BAP's pronouncement in *Grimes*—no second case with the first case still open, unless discharge has already been granted in the first case—should be discarded, or at least should be limited to cases where the debtor could potentially have been eligible for a discharge in the Chapter in which the second case was filed. It is unclear to this Court that the BAP would have ruled that a corporate or partnership debtor (which could never be eligible for a discharge in a Chapter 7) must have received a discharge in Chapter 11 before that debtor could file a Chapter 7, with the Chapter 11 still open, if that had been the facts the BAP was dealing with. Also, the United States Supreme Court in *Atkins* never said that whether the second case should be dismissed depended on whether or not the debtor had received a discharge in the first case. Thus, the BAP in *Grimes* was not following *Atkins,* but was going beyond what *Atkins* required.

## D. THE SINGLE ESTATE RULE

There is a more significant potential problem than the "discharge" problem, which may be caused by filing a second bankruptcy case with the first bankruptcy case still open. This more serious problem is the possibility of violating the "single estate rule." The *Grimes* decision mentions the single estate rule but deals with it only in a cursory way, referring to cases holding that a debtor may not maintain two cases simultaneously because this would violate the "single estate rule." *Grimes,* 117 B.R at 535.

■ The single estate rule is a rule that "property cannot be an asset of both [2] estates simultaneously." *Id.* The BAP in *Grimes* noted that the BAP had followed the single estate rule in *In re Berg*, 45 B.R. 899 (9th Cir. BAP 1984). However, there is no clear articulation of the single estate rule in the *Berg* case. The single estate rule is better articulated in *Associates Financial Services Corp. v. Cowen*, 29 B.R. 888, 894 (Bankr.S.D.Ohio 1983):

> The filing of two simultaneous bankruptcy petitions is contrary to the obvious contemplated function of the Bankruptcy Code to resolve debtors' affairs by administration of a debtor's property as a single estate under a single Chapter within the Code. The Bankruptcy Code provides different discharge remedies in different Chapters, and such remedies are intended to be exclusive of each estate.

*See also* Lex A. Coleman, *Individual Consumer "Chapter 20" Cases After Johnson: An Introduction to Nonbusiness Serial Filings Under Chapter 7 and Chapter 13 of the Bankruptcy Code*, 9 Bankr.Dev.J. 357, 394 (1992).

■ The BAP in *Grimes* did not explain how the fact that a debtor had obtained a discharge would solve the single estate rule problem. In fact, discharge in the first case would not have any bearing on the single estate problem, because obtaining a discharge or a denial thereof is not the event that dissolves the bankruptcy estate. The bankruptcy estate continues to exist in a Chapter 7 case until a Chapter 7 case is closed (*See* 11 U.S.C. 554(c)) or dismissed (11 U.S.C. 349(b)(3)). The estate continues to exist in a Chapter 11 case until the plan is confirmed (11 U.S.C. § 1141(b)) or the case is dismissed (11 U.S.C. 349(b)(3)). The estate continues to exist in a Chapter 12 case until the plan is confirmed, unless otherwise provided in the plan or confirmation order (11 U.S.C. § 1227(b)), or the case is closed, dismissed, or converted to a case under Chapter 7 (11 U.S.C. § 1207(a)(1)).

■ There are two Bankruptcy Code provisions which deal with the question of when the estate ceases to exist in a Chapter 13 case, creating considerable conflict on the issue. However, neither of these provisions makes discharge the relevant event for triggering the termination of the bankruptcy estate. On the one hand, 11 U.S.C. 1327(b) states that the Chapter 13 estate continues to exists until the plan is confirmed, except if otherwise provided in the plan or confirmation order. On the other hand, 11 U.S.C. § 1306(a)(1) states that the Chapter 13 estate terminates when the Chapter 13 case is closed, dismissed, or converted to a case under Chapter 7 or 11. As a result of these two provisions, there is a split in the case law as to when the Chapter 13 estate ceases to exist. Some cases hold that the Chapter 13 estate continues to exists until the Chapter 13 plan is confirmed, and includes "the debtor's property and earnings dedicated to the fulfillment of the Chapter 13 plan." *Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687, 688 (8th Cir.1993) (citations omitted). Other cases hold that "unless the Chapter 13 plan provides otherwise, confirmation of the Chapter 13 plan vests all property of the Chapter 13 estate in the debtor, ending the estate at that time." *Id.* at 689 (citations omitted).

■ In the present case, however, there is no violation of the single estate rule because the Chapter 11 estate in Debtor's first case ceased to exist at the time that Debtor's Chapter 11 Plan was confirmed in 1994. Pursuant to 11 U.S.C. § 1141(b), "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a [Chapter 11] plan vests all of the property of the estate in the debtor." Debtor Studio 5's Chapter 11 Plan revested the property of the estate in Debtor, therefore, upon confirmation of Debtor's Plan, there was no longer a Chapter 11 estate. The present Chapter 7 case was not filed until after the Chapter 11 Plan was confirmed, so there is no violation of the single estate rule, i.e. no assets were simultaneously assets of more than one bankruptcy estate.

E. THE COURT MAY DISMISS ANY BANKRUPTCY CASE (WHETHER THE FIRST OR SUBSEQUENT) WHICH FAILS THE "GOOD FAITH" REQUIREMENT

■ All bankruptcy cases have a requirement that the case be filed in "good

faith." *See, e.g.,* 11 U.S.C. §§ 1129(a)(3), 1325(a)(3); *In re Metz,* 820 F.2d 1495 (9th Cir.1987), *aff'g* 67 B.R. 462 (9th Cir. BAP 1986); *In re Can–Alta Properties,* 87 B.R. 89 (9th Cir. BAP 1988); and *In re Little Creek,* 779 F.2d 1068 (5th Cir.1986). Whenever a court determines that a bankruptcy case is not filed in "good faith," the court may dismiss that case. *In re Eisen,* 14 F.3d 469 (9th Cir.1994). A case filed in bad faith may be dismissed whether it is the debtor's first, or a subsequent case, though obviously the fact that a case is a successive filing can be taken into account by the court in determining whether or not the subsequent case is a "bad faith" filing.

Although the Bankruptcy Code does not define the term "good faith," both the *Metz* case and the *Little Creek* and *Can Alta* line of cases are helpful in making a determination of what a "good faith" filing means.

In *Metz,* the debtor filed and obtained a discharge in a Chapter 7 case. On the same day that the debtor received the Chapter 7 discharge (and with the Chapter 7 case still open), the debtor filed a Chapter 13 case. The Chapter 13 case was dismissed without prejudice by the Court soon thereafter because the Chapter 13 plan as proposed was not confirmable. *Metz,* 67 B.R. at 463. Debtor waited two weeks and then filed a second Chapter 13 case on the date foreclosure was rescheduled on debtor's residence. The secured creditor objected to confirmation of the Chapter 13 plan proposed by debtor in the new Chapter 13 case on the ground that the plan was not proposed in good faith, as required by 11 U.S.C. § 1325(a)(3). The secured creditor argued that filing a Chapter 13 case shortly after the debtor received a Chapter 7 discharge is bad faith *per se,* and not in compliance with the good faith requirement of 11 U.S.C. § 1325(a)(3). *Id.* at 464. The Bankruptcy Court ruled that the Code did not prohibit a debtor from bringing a Chapter 13 case shortly after receiving a discharge in a Chapter 7 case, on the facts of that case (debtor's earnings had increased and debtor was keeping his house payments current). *Id.* at 466.

The BAP affirmed the Bankruptcy Court, finding that the Bankruptcy Court's finding of good faith was not clearly erroneous. *Id.* The BAP stated that "[i]n this circuit, the test of good faith in proposing a Chapter 13 plan is made on a case-by-case basis, with the court reviewing the 'totality of the circumstances.'" *Id.* at 464 (citations omitted). Although noting that the two cases together were a "Chapter 20," with an unfavorable effect on the treatment of unsecured debt, the BAP refused to find that "Chapter 20" cases are *per se* filed in bad faith. *Id.* at 466. The BAP left open the possibility that a court might find a particular subsequent filing to be in bad faith under a totality of the circumstances on a case-by-case basis analysis. *Id.* The Ninth Circuit Court of Appeals affirmed, stating that "Metz's successive filing of bankruptcy petitions does not constitute bad faith *per se.* (citations omitted). Nevertheless, we agree with Downey [the creditor] that Metz's successive filings may be examined together and the result achieved by such filings reviewed against the statutory requirements. (citations omitted)." *Metz,* 820 F.2d at 1497.

The "totality of the circumstances on a case-by-case basis" analysis described in *Metz,* and first adopted by this Circuit in *Goeb v. Heid,* 675 F.2d 1386, 1390–91 (9th Cir.1982), lists several factors that should be taken into consideration in making the determination whether a case was filed in bad faith. Some of these factors are: (1) whether debtors acted equitably in proposing the Chapter 13 plan; (2) whether debtors had misrepresented facts in their proposed plan; and (3) whether debtors were "unfairly manipulating the Bankruptcy Code." *Metz,* 67 B.R. at 464–65 (quoting *Goeb,* 675 F.2d at 1390). The Court in *Metz* also noted that "the Ninth Circuit has also stated that a good faith test 'should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13.'" *Id.* at 465 (quoting *In re Chinichian,* 784 F.2d 1440, 1444–46 (9th Cir.1986)). Further, the Bankruptcy Court in *Metz* considered additional factors, namely whether there was a change in circumstances in debtor's situation, and whether debtor kept payments current during both cases. *Id.* at 466.

The "totality of the circumstances on a case-by-case basis" is similar to the *Little Creek* and *Can–Alta* test for determining whether a particular bankruptcy is filed in bad faith as a "new debtor syndrome" case. In *Little Creek*, the Court looked at a series of factors to determine whether a Chapter 11 case was filed in bad faith. Some of these factors are: (1) debtor has one asset; (2) the secured creditors' liens encumber the asset; (3) there are no employees except for principals; (4) there is little or no cash flow; (5) there are no available sources of income to sustain a plan of reorganization or to make adequate protection payments; (6) there are few, if any, unsecured creditors; and (7) the property has been posted for foreclosure or debtor cannot afford a bond in state court litigation. *Little Creek*, 779 F.2d at 1073.

Under a "totality of the circumstances" test, Debtor's Chapter 7 case is in good faith. First, the Debtor did not itself file the second case. The second case was filed as an involuntary petition by various creditors. There was no evidence that the Debtor requested or procured the filing of the involuntary petition. Second, similar to the situation in the *Jartran* cases, Debtor's present Chapter 7 case has a different purpose than Debtor's original Chapter 11 case. The purpose of the original Chapter 11 was to reorganize. The purpose of the present Chapter 7 is clearly to liquidate, since that is the only thing that can happen in Chapter 7. Third, the discharge issue is a "red herring" in this case because a corporate debtor can *never* receive a discharge in a Chapter 7 (see discussion, *supra* Section IV.C.).

Finally, as in the *Jartran* cases, Debtor tried to operate on a reorganized basis, but failed, and now needs to liquidate. Debtor has admitted in its briefing on this Order to Show Cause that "Subsequent to Plan confirmation [in the Chapter 11 case] the Debtor due among other reasons to the extraordinarily difficult economic climate encountering entities involved in the specialty retail clothing business, was unable to emerge as a profitable, viable going concern." (Debtor's Brief on Order to Show Cause, pg. 3, and para. 5 of Declaration of Debtor's President thereto). Debtor does not actually admit it defaulted in performing its Chapter 11 Plan, but that is the obvious inference. The Chapter 7 trustee shut down Debtor's business on or about December 14, 1995, and is seeking a buyer for Debtor's assets. (Declaration of Debtor's President, para. 8). Thus, Debtor has a legitimate need to be in Chapter 7.

For all of these reasons, the present Chapter 7 case meets the "good faith" test. Under these circumstances, it makes much more sense to liquidate Debtor in an orderly way under Chapter 7, with classes of creditors to be paid *pro rata* pursuant to the priority scheme of the Bankruptcy Code, than to deny bankruptcy protection to the Debtor, merely because the original Chapter 11 case is still open.

In conclusion, this Court disagrees with cases which adopt a *per se* rule against a debtor maintaining two bankruptcy cases at the same time. This Court agrees, as stated in the *Keen* and *Smith* cases, that filing of multiple cases presents a danger of abusing the bankruptcy system, including "judge shopping." *In re Keen*, 121 B.R. 513, 515 (Bankr.W.D.Ky.1990); *In re Smith*, 85 B.R. 872, 874 (Bankr.W.D.Ky.1990). Filing multiple cases is often an indication of bad faith, and the more cases that are filed, the stronger the likelihood of abuse. However, concerns of abuse can be addressed by application of the "totality of the circumstances" good faith analysis described above.